[No. H018718. Sixth Dist. Oct. 20, 1999.]

BABU SINGH MANN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

## COUNSEL

McManis, Faulkner & Morgan, James McManis and Michael Reedy for Plaintiff and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Martin H. Milas, Assistant Attorney General, Damon M. Connolly and Terry Senne, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**COTTLE, P. J.**—Plaintiff Babu Singh Mann appeals from a judgment denying a petition for writ of mandate in which he challenged the revocation of his vehicle salesperson's license by the Department of Motor Vehicles (DMV). Because we conclude that the trial court's judgment is supported by substantial evidence, we affirm the judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 1996, the DMV filed an accusation against Mann, then a licensed vehicle salesperson. The DMV sought to revoke Mann's license on essentially three grounds: (1) Mann had given incorrect or false and misleading information in his application for a vehicle salesperson's license; (2) Mann had been convicted on a plea of no contest to approximately 23 felonies involving moral turpitude which were substantially related to the qualifications, functions, or duties of the licensed activity;[1] and (3) Mann had previously had a vehicle dealer's license revoked. The DMV alleged that

---

[1]On or about August 29, 1994, Mann was convicted in the Superior Court of Santa Clara County on a plea of no contest to the following criminal offenses: (1) grand theft, thirteen counts, sections 484/487, subdivision (a), of the Penal Code; (2) conspiracy, two counts, one with an excess loss enhancement, sections 182, subdivision (a)(1), and section 12022.6, subdivision (b), of the Penal Code; (3) filing false return, sections 7152 and 7153.5 of the Revenue and Taxation Code, five counts; (4) false and fraudulent tax return and statement, section 19401, subdivision (a), of the Revenue and Taxation Code; (5) failing to file tax return when due, sections 6452 and 7153.5 of the Revenue and Taxation Code; and (6) failing to pay sales tax, three counts, one with an excess loss enhancement, sections 6451 and 7153.5 of the Revenue and Taxation Code and section 12022.6, subdivision (b), of the Penal Code. Mann's

these grounds were cause to suspend Mann's license under section 11806, subdivision (d) of the Vehicle Code, which incorporated Vehicle Code section 11509, subdivision (a)(2), and section 11703, subdivisions (a), (b), (d) and (e).

A hearing on the accusation was held on March 19, 1997, before an administrative law judge. In addition to Mann, seven witnesses testified at this hearing, including Mann's relatives, his former criminal attorney, a family friend, and representatives of Mann's current employer. Mann also submitted additional declarations from other coworkers.

On May 15, 1997, a proposed decision was entered by the administrative law judge. The administrative law judge entered a 10-page decision, adopting certain factual findings and determining the issues in the case. The administrative law judge found that Mann had made false or misleading statements in applications, and had been convicted of crimes involving moral turpitude, which constituted cause for revocation of his license, but that there were also certain matters in mitigation. In a section of the decision entitled "Determination of Issues," paragraph VIII, the administrative law judge outlined a number of mitigating factors, and found that it would not be contrary to the public interest to allow Mann a probationary license, conditioned upon continued employment by Stevens Creek Toyota.[2] The administrative law judge therefore recommended a three-year probationary license for Mann, allowing him to continue working at Stevens Creek Toyota under specified terms and conditions.

The DMV issued a notice of the proposed decision, along with a statement that the director of the DMV had not adopted the proposed decision, and notified the parties that they could present oral argument before the DMV director or the director's representative.

plea was accepted and entered by the court in January of 1995. Mann was ordered to make restitution in the amount of $396,864.86.

[2]Paragraph VIII of the administrative law judge's proposed decision states: "Regarding matters in mitigation, extenuation and rehabilitation as set out in the FINDINGS, paragraph VII, at first blush one could not imagine a more dissolute past for a young man, regardless of financial or familial circumstances. Age almost assuredly played a key role . . . along with poor judgment, greed and an obvious disdain for the law. On the other hand, one cannot sift through the evidence in this case without being impressed by the quality and quantity of the accolades for respondent that hint at the beginnings of real change. He has discovered people who believe in him, support him and are willing, nay eager, to employ him. No doubt, a certain amount of self interest is behind his employer's patronage. But in our mercantile society, one can conceive of a plethora of motivations much worse. Certainly, these sentiments and the continued willingness of those around him to be responsible for his continued development and guidance are reassuring, merit consideration and the opportunity to do so. It appears it would not be contrary to the public interest to allow respondent a probationary license, *conditioned upon continued employment by Stevens Creek Toyota.*" (Italics in original.)

On November 4, 1997, oral argument was presented by counsel to the DMV director. No additional testimony was presented before the DMV director. The following day, on November 5, 1997, the DMV filed its decision. The DMV adopted most portions of the proposed decision of the administrative law judge, but did not adopt paragraph VIII of the "Determination of Issues" and the proposed order allowing a three-year probationary license for Mann. The DMV substituted a different paragraph VIII and a different order. The order entered by the DMV revoked Mann's vehicle salesperson's license effective December 5, 1997.

Mann filed a petition for reconsideration with the DMV on November 24, 1997. In that petition for reconsideration, Mann argued that the DMV had improperly shifted the burden of proof to Mann, and that the DMV could not demonstrate that it would be detrimental to the public interest for Mann to retain a probationary license. Mann also argued that the evidentiary findings did not support the conclusion that his license should be revoked, that the findings were not supported by the evidence, and that the penalty imposed was overly harsh and punitive. Mann's probation officer sent a letter to the DMV director in support of reconsideration, stating that he did not consider Mann a threat to the public. The DMV denied Mann's petition for reconsideration.

On December 4, 1997, Mann filed a verified petition for writ of administrative mandamus with the superior court, requesting that the superior court direct the DMV to set aside its decision. Mann also filed an ex parte application for a stay of the DMV's decision to revoke the license. In support of his request for the stay of the DMV's decision, Mann filed his own declaration and declarations from his coworkers and his probation officer. The probation officer stated that allowing Mann to continue working at Stevens Creek Toyota would not endanger the public, and that he wanted Mann to continue paying restitution to the state, of which Mann had paid more than $125,000 in less than three years.

On December 8, 1997, the trial court granted an initial request for a stay. On February 3, 1998, the trial court held a more detailed hearing, continued the order staying the DMV's decision, and scheduled a hearing on Mann's petition for writ of administrative mandamus. Later, in April of 1998, the stay of the DMV's decision was revised so that Mann could accept an offer of employment from Oak Tree Mazda. The court ordered that Mann and his employer abide by the condition that Mann would have no involvement with licensing, sales tax or DMV fees, and would not handle money, prepare contracts or arrange financing.

A hearing on Mann's petition for writ of administrative mandamus took place in the superior court on April 23, 1998. Counsel argued at this hearing,

but no additional evidence was presented. After examining the administrative record and considering the arguments and authorities submitted by the parties, the court denied Mann's petition in a minute order filed the following day. No statement of decision was requested or prepared.

On June 19, 1998, Mann filed an appeal from the trial court's decision denying his petition for writ of mandate. Judgment was entered in favor of the DMV on July 1, 1998.[3] This court denied Mann's request for a stay of his license revocation during the pendency of this appeal.

## II. DISCUSSION

On appeal, Mann argues that the DMV improperly shifted the burden of proof to Mann, that certain evidentiary findings adopted by the DMV do not support the DMV's decision to revoke his salesperson's license, and that certain other findings made by the DMV are not supported by the evidence.

At the outset, it is helpful to consider the standards that should be utilized in this case by the administrative agency, the trial court, and this court.

### A. *Standard of Proof Utilized by Administrative Agency*

Evidence Code section 115 provides in part that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." Vehicle Code section 11806 provides that a salesperson's license may be suspended when the DMV makes any of a number of specified "findings and determinations." The statutes which govern granting, suspending and revoking these licenses give no suggestion that the determination must be made by an elevated standard of proof.

Mann asserts that the DMV had the burden of producing "clear and convincing [proof] to a reasonable certainty" that license revocation was necessary to protect the public interest. Mann presumes that the standard of proof for revocation of professional licenses, set forth in *Ettinger* v. *Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601], applies to all occupational licenses. This is incorrect.

In fact, courts have drawn a clear distinction between professional licenses, such as veterinarians or psychologists, and nonprofessional occupational licenses. In *San Benito Foods* v. *Veneman* (1996) 50 Cal.App.4th 1889, 1894 [58 Cal.Rptr.2d 571] (hereafter *San Benito Foods*), this court

---

[3]Pursuant to rule 2(c) of the California Rules of Court, we shall treat Mann's appeal as an appeal filed immediately after entry of the judgment.

held that the preponderance of the evidence standard should be used in administrative proceedings to suspend or revoke a food processor's license. The court noted that a food processor's license could be obtained without meeting any educational or skill requirements. The only specific requirements for obtaining such a license were that the applicant show " 'character, responsibility, and good faith' " and a sound financial status. (50 Cal.App.4th at p. 1894.) In contrast, in order to obtain a professional license, an applicant must ordinarily satisfy extensive educational and training requirements and pass a rigorous state-administered examination. (*Ibid.*) The court noted that this sharp distinction between professional licenses and nonprofessional licenses supported a distinction in the standards of proof applicable to proceedings to revoke these two different types of licenses. "Because a professional license represents the licensee's fulfillment of extensive educational, training and testing requirements, the licensee has an extremely strong interest in retaining the license that he or she has expended so much effort in obtaining. It makes sense to require that a higher standard of proof be met in a proceeding to revoke or suspend such a license. The same cannot be said for a licensee's interest in retaining a food processor's license." (*Ibid.*)

A vehicle salesperson's license is a nonprofessional license. The license carries no educational, training or testing prerequisites. (Veh. Code, § 11802.) All of the application criteria concern historical evidence of the applicant's "character, honesty, integrity, and reputation," and information regarding prior court judgments and disciplinary actions. (Veh. Code, § 11802.) Because no law requires that a standard of proof other than preponderance of the evidence be applied in administrative proceedings to suspend or revoke a vehicle salesperson's license, Evidence Code section 115 governs the standard of proof.

Vehicle Code sections 11806, subdivision (d) and 11703, subdivision (d) allow the DMV to revoke a salesperson's license when the salesperson has been convicted of a crime or engaged in conduct involving moral turpitude "which is substantially related to the qualifications, functions, or duties of the licensed activity." Section 11703, subdivision (d) further provides that a conviction "after a plea of nolo contendere is a conviction within the meaning of this section."

The license revocation procedure is designed to protect the public, not to administer punishment to individual licensees. (*Ettinger* v. *Board of Medical Quality, supra,* 135 Cal.App.3d at p. 856.) As the court stated in *Small* v. *Smith* (1971) 16 Cal.App.3d 450, 457 [94 Cal.Rptr. 136], "The object of an administrative proceeding aimed at revoking a license is to protect the

public, that is, to determine whether a licensee has exercised his privilege in derogation of the public interest, and to keep the regulated business clean and wholesome." Consequently, the DMV's burden was to prove by a preponderance of the evidence that Mann exercised the privilege of his license in derogation of the public interest.

## B. *Standard of Review Utilized by the Trial Court*

Code of Civil Procedure section 1094.5, subdivision (c) provides the basic framework by which an aggrieved party to an administrative proceeding may seek judicial review of any final order or decision rendered by a state agency. ■ There are two tests for judicial review of the evidentiary basis for the agency's decision. The "independent judgment" rule applies when the decision of an administrative agency will substantially affect a fundamental vested right. The trial court must not only examine the administrative record for errors of law, but must also exercise its independent judgment upon the evidence disclosed in a limited trial de novo. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].) The "substantial evidence" rule applies when the administrative decision neither involves nor substantially affects a vested right. The trial court must then review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law, but need not look beyond the record of the administrative proceedings. (*Id.* at p. 144.) Which standard is to be utilized thus depends upon whether the administrative action affects a fundamental vested right. (*Clerici* v. *Department of Motor Vehicles* (1990) 224 Cal.App.3d 1016, 1023 [274 Cal.Rptr. 230].)

■ A "fundamental vested right" has been defined in terms of a contrast between a right possessed and one that is merely sought. (*Clerici* v. *Department of Motor Vehicles, supra,* 224 Cal.App.3d at p. 1023.) " 'The term "vested" denotes a right that is either "already possessed" [citation] or "legitimately acquired" [citation]. Business or professional licensing cases have distinguished between the denial of an application for a license (nonvested right) and the suspension or revocation of an existing license (vested right). [Citation.] Once an agency has exercised its expertise and issued a license, the agency's subsequent revocation of that license generally calls for an independent review of the facts, because the revocation or suspension affects a vested right. [Citations.]' " (*Ibid.*; *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396 [188 Cal.Rptr. 891, 657 P.2d 383].) In contrast, the denial of a license to a previously unlicensed person does not affect a vested right, and the substantial evidence test should be used. (*Clerici* v. *Department of Motor Vehicles, supra,* 224 Cal.App.3d at p. 1023.)

In this case, Mann had a vehicle salesperson's license, and his right must be considered vested. Whether the underlying right is considered fundamental must be considered "from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation . . . .' " (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29]; *San Benito Foods, supra,* 50 Cal.App.4th at p. 1896.) " '[T]he crucial question [in determining whether a right is fundamental] is not the actual amount of harm or damage in the particular case but the essential character of the right in human terms. Thus, the critical area of focus is the nature of the right . . . .' " (*San Benito Foods, supra,* 50 Cal.App.4th at p. 1896.) The theory is that abrogation of a fundamental vested right "is too important to the individual to relegate it to exclusive administrative extinction." (*Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 144.)

In *San Benito Foods, supra,* 50 Cal.App.4th 1889, this court held that the plaintiff's food processor's license, which was crucial to plaintiff's economic viability as a food processor, was a fundamental vested right. (*Id.* at p. 1897.) Similarly, in *Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29 [40 Cal.Rptr.2d 137], the court held that revocation of a permit to practice one's profession affects a fundamental vested right. (*Id.* at p. 35.) In this case, that revocation of Mann's vehicle salesperson's license involved a "fundamental vested right." The trial court was therefore required to exercise its independent judgment upon the evidence in the case.

## C. *Standard of Review Utilized by This Court*

■ Where a superior court is required to exercise its independent judgment upon the record of an administrative proceeding, the scope of review on appeal is limited. An appellate court must sustain the superior court's findings if substantial evidence supports them. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].) "In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court." (*Ibid.*)

## D. *Substantial Evidence*

As noted earlier, the DMV's burden was to prove by a preponderance of the evidence that Mann exercised the privileges of his license in derogation

of the public interest. The trial court's task was to exercise its independent judgment upon the weight of the evidence in the case, including the evidence produced before the administrative agency.

We presume that the trial court did exercise its independent judgment upon the evidence in this case. Mann has cited no evidence to the contrary, and we have found no indication in the record that the trial court failed to exercise its independent judgment as required by law. In the exercise of that judgment, the trial court apparently concluded that the weight of the evidence was that the DMV had carried its burden to show that Mann had exercised the privilege of his license in derogation of the public interest.

█ The question before this court is whether the superior court's judgment is supported by substantial evidence. After reviewing the entire record submitted with this appeal, we are persuaded that the trial court's decision is supported by substantial evidence.

In reaching this conclusion, we rely heavily on Mann's extensive criminal record. Mann was convicted of more than 20 crimes of moral turpitude which were substantially related to his occupations. On January 13, 1995, Mann was convicted of 14 counts of grand theft having 14 separate victims (12 individual and 2 lending institutions), numerous tax crimes, and conspiracy to commit various felonies. These crimes spanned two occupations (vehicle salesperson and real estate salesperson) and concerned criminal activity over several years. The DMV found, and the trial court apparently agreed, that these convictions were for crimes involving moral turpitude that were substantially related to the qualifications, functions and duties of a licensed vehicle salesperson. At the time of his criminal convictions, Mann was already on probation for submitting false and misleading license applications to the DMV in 1988 and again in 1993.

Although other evidence in the record clearly supports Mann's effort to show that his current circumstances make revocation unnecessary, the trial court was entitled to conclude, on the basis of this record, that revocation is warranted. Mann's criminal activity and his false statements in his license application unquestionably provide a sufficient basis for the trial court's conclusion that the public interest is best served by the revocation of Mann's license.

E. *Mann's Arguments*

1. *Burden of Proof*

Mann argues that the DMV improperly shifted the burden to him to disprove that revocation was warranted. Our task on appeal, however, is to

review the decision of the trial court. There is no indication that the trial court misunderstood or improperly shifted the DMV's burden of proof in this case. Because all of the evidence in the case was submitted to the trial court, and the trial court exercised its independent judgment upon the evidence, the trial court's judgment was not tainted by any error of the agency in applying the appropriate burden of proof.

In addition, we are not convinced by plaintiff's argument that the DMV shifted the burden of proof to Mann to disprove that revocation was warranted. Mann's argument is based on the following sentences in the DMV's decision: "The principal issue in this case is whether respondent is rehabilitated to such an extent that he should be entrusted with a probationary license. The degree of harm to the public caused by respondent acting in the prior course of licensed activity with the Department of Motor Vehicles and the Department of Real Estate, and his past failure to appreciate the seriousness of his conduct, mandate that proof of rehabilitation be clear and convincing to a reasonable certainty." Mann construes this sentence to mean that the DMV shifted the burden of proof to him. These two sentences, however, were only a part of the DMV's order, in its paragraph VIII of the "Determination of Issues" replacing the administrative law judge's paragraph regarding Mann's rehabilitation. When the entire decision is considered, it is clear that the DMV found that revocation was warranted on the basis of Mann's criminal activities and his false license application. The bases for revocation were clearly set forth in earlier paragraphs of the DMV's decision. Construed in the context of the entire DMV decision, we are persuaded that the challenged language simply reflects the fact that the DMV found the uncontradicted evidence of Mann's crimes more compelling than the evidence of his rehabilitation. In any event, as noted above, the question before this court concerns the trial court's judgment, and there is no basis for a conclusion that the trial court applied an erroneous burden of proof to the evidence.

## 2. Findings Adopted by the DMV

Mann next argues that the DMV adopted, as part of its decision, numerous evidentiary findings by the administrative law judge that do not support the DMV's decision to revoke his license, "as they demonstrate that Mann has been rehabilitated to the point where he does not pose a threat to the public." We are not persuaded by this argument. We have reviewed all of the evidence, including the DMV's findings. It is true that a number of the DMV's findings set forth positive evidence regarding Mann. For example, Mann encountered some very difficult family circumstances in 1984, when he was 19, and had difficulties after his father's death providing for his

family. His family's support for him was evident at the hearing, and his mother, sister and cousin emphasized his progress and growth as a responsible person who had learned from his mistakes. In addition, Mann's criminal attorney cautioned against drawing inferences from the number of Mann's convictions, noting that he doubted Mann's guilt as to most of the charges. Mann's life had apparently assumed a new and positive direction after he was hired by Stevens Creek Toyota, and his activities there were appropriately supervised. Representatives of Mann's employer testified about their perception of Mann's enormous potential and talent. He appeared to be succeeding under his employer's guidance. Other officers of Stevens Creek Toyota commended Mann's willingness to work with them and other staff in adhering to DMV tax, license, and finance details required in the automobile business. The record also contains evidence regarding Mann's current success working at Oak Tree Mazda, and the limited nature of his role at Mann Motor Corporation (where many of the crimes for which Mann was convicted occurred).

Mann is correct that these findings do not demonstrate that allowing Mann to continue working poses a threat to the public interest. Mann argues that the DMV's decision to revoke his sales license cannot be supported by these evidentiary findings, and that there is no substantial evidence to support the trial court's order upholding the DMV's decision.

The question before this court is not, however, whether some of the evidence supports Mann's position (as it clearly does), but whether the trial court's decision is supported by substantial evidence. Despite the evidence regarding Mann's rehabilitation and the DMV's positive findings regarding his circumstances, other facts supporting the trial court's decision, such as Mann's numerous felony convictions and his omission of information from license applications, were uncontradicted. Despite the testimony of his family that he had learned from his mistakes and the testimony of his criminal defense attorney regarding the circumstances underlying his plea of no contest, the court was entitled to give great weight to the nature and scope of Mann's criminal conduct. Despite his employers' positive comments, the court was entitled to recognize that these same employers had taken steps to isolate Mann from the functions in which he had previously committed his fraudulent and criminal activities. In summary, despite the positive evidence submitted by Mann, on the entire record before us, substantial evidence supports the trial court's determination that revocation of Mann's license was appropriate.

3. *Evidentiary Support for Additional Findings*

Mann also argues that the DMV made findings that were not supported by the evidence. Mann complains primarily about findings that evidence of

Mann's rehabilitation is insufficient; that Mann's "recent conviction coupled with the surrounding circumstances clearly reflect unfavorably upon [Mann's] moral character, honesty and integrity[;] and that [his] employer's self interested testimony on behalf of [Mann] is not sufficient to outweigh the protracted and aggravated nature of [Mann's] fraudulent conduct."

Regarding his conviction date, Mann argues that the date on which he was sentenced (January 6, 1995) does not necessarily reflect recent criminal activity. Mann emphasizes that all but one of the criminal acts involved occurred from 1988 through 1990.

The DMV did not claim that the conviction date necessarily reflected criminal activity in the immediate past. It simply noted the recent conviction as one factor suggesting that the process of rehabilitation might not be complete. Less than three years passed between Mann's 1995 sentencing and the 1997 hearing regarding his license revocation. The DMV could reasonably consider, in making its license revocation assessment, that Mann had only recently been required to directly confront and absorb the legal consequences of his criminal conduct.

Mann also claims that insufficient evidence supports the DMV's finding that the "surrounding circumstances" of Mann's "recent conviction" reflect unfavorably upon his character and honesty. Mann emphasizes evidence showing that his life started moving in a positive direction, with his energies channeled into productive behavior. We are persuaded that despite indications that Mann was making progress, the DMV was entitled to consider Mann's conviction date, the fact that he had recently served jail time, the fact that restitution was incomplete, and the scope and gravity of his earlier fraudulent and criminal conduct. In summary, despite the evidence regarding Mann's rehabilitation, on this record substantial evidence supports both the DMV's assessment that rehabilitation was incomplete and the trial court's decision upholding the DMV's revocation of Mann's license.

## III. Disposition

The trial court's judgment is affirmed.

Premo, J., and Elia, J., concurred.