[No. A112569. First Dist., Div. One. May 31, 2007.]

MAARTEN KALWAY et al., Plaintiffs, Cross-defendants and Appellants, v.
CITY OF BERKELEY, Defendant, Cross-complainant and Respondent.

828

COUNSEL

Law Offices of Jonathan Quint and Jonathan Quint for Plaintiffs, Cross-defendants and Appellants.

Manuela Albuquerque, City Attorney, and Zach Cowan, Assistant City Attorney, for Defendant, Cross-complainant and Respondent.

OPINION

STEIN, J.—Maarten Kalway inherited two contiguous parcels of land located on Panoramic Hill, Berkeley, an area designated part of the "Hill Hazardous Fire Area," zoned ES-R (Environmental Safety Residential). Panoramic Hill is a steep area close to parks and wildlands. The zoning designation identifies it as an area with substandard vehicular access that is particularly susceptible to severe damage or destruction from fire and earthquake because of its steep topography and location. Panoramic Hill's sanitary sewer capacity is inadequate. It has limited water pressure, which, together with the substandard vehicle access, significantly impairs the City of Berkeley's ability to fight fires in the area. As a result, in part, the City of Berkeley (City) requires a minimum lot size of 9,000 square feet. One of the parcels inherited by Mr. Kalway, the "Mosswood Road Parcel," is undeveloped. It is approximately 5,000 square feet in area, rendering it substandard in size. Both the Mosswood Road Parcel and the other parcel inherited by Mr. Kalway, the "Arden Road Parcel," are on dead-end streets longer than 150 feet, lacking adequate room for fire apparatus to turn around, and therefore lacking required access for emergency vehicles.

The Subdivision Map Act (Gov. Code, § 66410 et seq.)[1] (the Act) confers authority on local agencies, such as the City of Berkeley Planning Commission, to enact local ordinances providing for merger of contiguous parcels held by the same owner if any one parcel does not conform to standards for minimum parcel size, at least one of the affected parcels is undeveloped, and with respect to any affected parcel, "one or more of the following conditions exists: [¶] (1) Comprises less than 5,000 square feet in area at the time of the determination of merger. [¶] . . . [¶] (3) Does not meet current standards for sewage disposal and domestic water supply. [¶] (4) Does not meet slope stability standards. [¶] (5) Has no legal access which is adequate for vehicular and safety equipment access and maneuverability. [¶] (6) Its development would create health or safety hazards." (§ 66451.11, subds. (a), (b).) Berkeley Municipal Code section 21.52.020 requires merger "[i]f any one of two or

---

[1] All statutory references are to the Government Code unless otherwise noted.

more contiguous parcels . . . held by the same owner does not conform to existing zoning regulations regarding site area to permit development . . . , and at least one parcel or unit has not been developed . . . provided that the requirements of . . . the Subdivision Map Act are satisfied."

The Act includes procedural safeguards for affected property owners, permitting merger only if the owner has received notice and is afforded the opportunity for a hearing. (§ 66451.11, subd. (c).) It requires the local agency to send notice of "intention to determine status" to the record owner of the property by certified mail, and to file notice with the county recorder. (§ 66451.13.) It provides a merger of parcels becomes effective when the local agency files a notice of merger with the county recorder. (§ 66451.12.) In addition, and of particular relevance here, the Act provides, "For purposes of [the merger provisions], when determining whether contiguous parcels are held by the same owner, ownership shall be determined as of the date that notice of intention to determine status is recorded." (§ 66451.11, subd. (c).)

In 2004, the City began the process of merging undeveloped substandard lots in the Panoramic Hill area. On September 28, 2004, and again on September 30, 2004, the City sent notice to Mr. Kalway that it was taking action to merge the Arden Road and Mosswood Road Parcels. The City also filed notice of intention to determine status. Mr. Kalway responded by advising the City through his attorney that a few days earlier, on September 27, 2004, he had deeded the Mosswood Road Parcel to his wife, Mary Kalway. In February 2005, the City's planning commission found the transfer was intended solely to thwart the planned merger and to evade or circumvent the Act and its salutary purposes. The commission concluded that the transfer had no effect on the merger proceedings, and adopted a resolution merging the two parcels.

On April 18, 2005, Mr. Kalway and his wife filed a petition for administrative writ of mandamus, seeking an order compelling the City to set aside its decision to merge the parcels. The City answered, and also filed a cross-complaint seeking an order cancelling the deed and requiring Mrs. Kalway to reconvey the property to Mr. Kalway. The trial court ultimately granted summary judgment to the City, cancelling the grant deed from Mr. Kalway to Mrs. Kalway. It therefore denied the petition for writ of mandamus and entered judgment in favor of the City against the Kalways.

This appeal followed.

## DISCUSSION

The Kalways do not challenge the City's assertions that the Mosswood Road Parcel is substandard in size for the area. They also do not challenge

the City's assertions that public health and safety concerns mandate in favor of merger or that, but for the last-minute deed to Mrs. Kalway of the Mosswood Road Parcel, the City had clear authority to merge the parcels. The Kalways agree that Mr. Kalway deeded the Mosswood Road Parcel to Mrs. Kalway in order to prevent the City from merging the parcels, after learning, informally, of the City's intentions. Their position is that because section 66451.11, subdivision (c) provides "ownership shall be determined as of the date that notice of intention to determine status is recorded," the law allowed them to transfer ownership of the property as a valid means of avoiding the merger.

*Standard of Review*

There are two tests for judicial review of the evidentiary basis for an agency's decision: (1) the "independent judgment" rule, which applies when the decision of the agency will substantially affect a fundamental vested right; and (2) the "substantial evidence rule," which applies when the agency decision neither involves nor affects a vested right. (*Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320 [90 Cal.Rptr.2d 277].) A "fundamental vested right" denotes a right that is already possessed as opposed to a right that is merely sought. (*Ibid.*) The parties here disagreed as to whether the Kalways had a "fundamental vested right" that was affected by the City's action, and it is not clear which test was employed in the trial court. It is of little matter here, as the trial court and the City reached the same decision on the same evidence, and our review of the facts on appeal is guided by the substantial evidence test. (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 368 [79 Cal.Rptr.2d 25].) On questions of law arising in mandate proceedings, we exercise independent judgment. Accordingly, in interpreting statutes, we apply our independent review without reference to the trial court's actions. (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313 [45 Cal.Rptr.3d 511].)

*Meaning of "Ownership" for Purposes of Merger Under the Subdivision Map Act*

The Kalways' position, in essence, is that the term "ownership," for purposes of determining whether contiguous parcels are held by the same owner under section 66451.11, means title of record as of the date a notice of intention to determine status is filed and nothing else, thereby allowing property owners to avoid merger by the simple expedient of transferring paper title to someone else, including some other family member, irrespective

of any intent to change possession of or control over the affected property. We disagree, concluding instead that the purpose and history of the Act mandate a broad construction of the term, allowing local agencies to look past the paper title in determining whether properties are under common ownership for purposes of the merger statutes.

As this court pointed out in *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 986 [44 Cal.Rptr.2d 93], "[t]he objective of statutory interpretation . . . is to ascertain and effectuate legislative intent. If the words are clear, a court may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.] At the same time, however, a statute is not to be read in isolation; it must be construed with related statutes and considered in the context of the statutory framework as a whole. [Citation.] A court must determine whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other related provisions. Literal construction of statutory language will not prevail if contrary to the legislative intent apparent in the statutory scheme. [Citation.] Statutory language should not be given a literal meaning that results in absurd and unintended consequences. [Citations.]"

The Act has three principal goals: "[T]o encourage orderly community development, to prevent undue burdens on the public, and to protect individual real estate buyers. [Citations.] Thus, the Act serves 'to coordinate planning with the community pattern laid out by local authorities and to assure proper improvements are made so the area does not become an undue burden on the taxpayer [citation].' [Citations.]" (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 563–564 [6 Cal.Rptr.3d 746] (*van't Rood*).) The Act, and the ordinances passed with it, have several salutary purposes, such as to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas, and to protect both public and purchaser. (*Pratt v. Adams* (1964) 229 Cal.App.2d 602, 605–606 [40 Cal.Rptr. 505] (*Pratt*).)

For obvious reasons, the purpose of the Act and the interests protected by the Act are furthered by the merger of substandard parcels to limit the impact of development in areas unable to handle increased demands on common resources and services. At one time, merger of substandard parcels was automatic (former § 66424.2; Stats. 1976, ch. 928, § 4, p. 2120; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 755 [29 Cal.Rptr.2d 804, 872 P.2d 143].) That provision was limited as the statutes were modified successively over the years, the modifications presumably responding to concerns that lots were being merged without affording affected landowners notice and an opportunity to be heard, and also because of a state concern

over local regulation of parcel merger for purposes of development. (*Morehart*, at p. 752; *van't Rood, supra*, 113 Cal.App.4th at p. 567.)

■ As they stand today, the merger statutes balance the interests of the public and private ownership by allowing local merger only if the conditions of section 66451.11 are met, and by providing the property owner with the opportunity to demonstrate the conditions have not been met. The purpose of the notice requirement of section 66451.11 is to afford persons such as the Kalways with the opportunity to demonstrate to the local agency that a proposed merger serves no legitimate purpose. Nothing in the statute suggests, as the Kalways assume, a legislative intent to create a legitimate means of avoiding agency action comparable to skillful estate or business planning as a means of avoiding inheritance or income taxes. To allow owners such as the Kalways to avoid merger, and the salutary effects of the Act, by means of a paper transfer of ownership, is inconsistent with the purpose of the Act and the balance struck by its provisions. The Kalways' interpretation, if adopted, also would discourage open discussion and planning by local agencies, as it would create a loophole for any property owner receiving advance warning of a potential merger.

■ We conclude, therefore, that paper title to a parcel is only one indicator of "ownership" for purposes of exempting property from the reach of the merger statutes. Other indicators would include such things as possession of or control over the affected property, whether a transfer occurred shortly before the planned merger, whether it occurred between family members, and the purpose of any recent transfer in title. In sum, where two or more properties have the same owner in substance, even if not in form, they may be merged if the Act's substantive conditions for merger exist and its procedural requirements are met.

## City's Determination of Ownership

■ The record discloses that Mrs. Kalway paid nothing for the Mosswood Road Parcel. There is some evidence Mr. Kalway transferred it to Mrs. Kalway without talking to her about it. Finally, the Kalways candidly concede the transfer was done solely in order to avoid merger. In sum, the evidence fully supports the City's determination that irrespective of the grant deed, the Mosswood Road Parcel and the Arden Road Parcel were in substance under common ownership at the time the City recorded notice of intent to determine status. The merger of the parcels, therefore, was authorized by law.

## Court's Power to Decline to Grant Requested Relief

There is an alternative reason for upholding the trial court's decision to deny the Kalways' petition. The trial court, citing *Pratt, supra*, 229

Cal.App.2d at page 606, ruled it would not grant the Kalways' petition because to do so would authorize a scheme designed to circumvent the Act. In *Pratt,* the petitioners, a group of property owners, sought to avoid the effects of the Act through a scheme to subdivide their property outside of the Act. At that time, the Act, by its terms, applied only to divisions of property into five or more parcels for purposes of sale or lease. (229 Cal.App.2d at p. 605.) Two members of the group purchased a large parcel of land, which they then conveyed to 12 other members as joint tenants. One of the joint tenants then filed a partition action against the others, with the result that the land was divided into 12 parcels. Each of the 12 parcels was divided by a group member into no more than four parcels, so that in a matter of months the original parcel had been divided into 38 smaller parcels wholly outside of the Act. While this was happening, the local board of supervisors, on an emergency basis, enacted zoning for the area to regulate the group's use of the property. The board then refused to issue building permits to the members of the group, apparently because their plans violated the newly enacted zoning. The group petitioned to compel the board to issue the permits, pointing out that the county code provided that zoning would not affect the right to build upon a lot if it was a separate lot or parcel of record as of the date the zoning went into effect. (229 Cal.App.2d at p. 604.) It was undisputed that the group had managed to complete their division of the property into separate lots as of the date the zoning went into effect.

 Division Three of this court affirmed a judgment denying the writ of mandate. Division Three held, "[The salutary purposes of the Act] would be defeated if the courts were to recognize avoidance of the statutes by such use of an action in partition as was devised here. Mandamus is an equitable remedy. It will not be used to compel the performance of acts which are illegal, contrary to public policy, or which tend to aid an unlawful purpose. [Citations.] This is not a case in which a building permit has been denied because of some old violation of subdivision laws, possibly done by predecessors in title to the applicant; it is a case where the permit is sought as the culmination of a plan to circumvent the law by one of the planners. The courts will not assist, by equitable process, the fulfillment of this plan." (*Pratt, supra,* 229 Cal.App.2d at p. 606.)

 For the reasons we have discussed, we find the Kalways have attempted to avoid the salutary purposes of the Act, the City's ordinances and the City's zoning laws, by means of a paper transfer of title between husband and wife. We look to the substance of a transaction and not to its form to determine if the legislative purposes underlying the Act are violated. (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 972 [191 Cal.Rptr. 415]

[administrative mandamus denied to compel county to issue certificates of compliance where parcels created by gift deed conveyances from parents to their children violated spirit of the Act].) Like the actions of the petitioners in *Pratt, supra,* 229 Cal.App.2d 602, the Kalways' actions violate the spirit, if not the letter, of the Act. It follows that the trial court quite properly declined to afford the Kalways any relief on their petition.

*Court's Power to Cancel the Grant Deed*

■ That a transfer is not authorized by the Act, or that it violates the Act, does not in and of itself allow an agency to seek and obtain cancellation of the deed through court action. Section 66499.32 gives grantees the sole option to avoid the consequences of a conveyance made contrary to the provisions of the Act.[2] Section 66499.33 sets forth the remedies of local agencies, providing, "This division does not bar any legal, equitable or summary remedy to which any aggrieved local agency or other public agency, or any person, firm, or corporation may otherwise be entitled, and any such local agency or other public agency, or such person, firm, or corporation may file a suit in the superior court of the county in which any real property attempted to be subdivided or sold, leased, or financed in violation of this division or local ordinance enacted pursuant thereto is located, to restrain or enjoin any attempted or proposed subdivision or sale, lease, or financing in violation of this division or local ordinance enacted pursuant thereto."

---

[2] Section 66499.32 provides: "(a) Any deed of conveyance, sale or contract to sell real property which has been divided, or which has resulted from a division, in violation of the provisions of this division, or of the provisions of local ordinances enacted pursuant to this division, is voidable at the sole option of the grantee, buyer or person contracting to purchase, his heirs, personal representative, or trustee in insolvency or bankruptcy within one year after the date of discovery of the violation of the provisions of this division or of local ordinances enacted pursuant to the provisions of this division, but the deed of conveyance, sale or contract to sell is binding upon any successor in interest of the grantee, buyer or person contracting to purchase, other than those above enumerated, and upon the grantor, vendor, or person contracting to sell, or his assignee, heir or devisee.

"(b) Any grantee, or his successor in interest, of real property which has been divided, or which has resulted from a division, in violation of the provisions of this division or of local ordinances enacted pursuant thereto, may, within one year of the date of discovery of such violation, bring an action in the superior court to recover any damages he has suffered by reason of such division of property. The action may be brought against the person who divided the property in violation of the provisions of this division or of local ordinances enacted pursuant thereto and against any successors in interest who have actual or constructive knowledge of such division of property.

"The provisions of this section shall not apply to the conveyance of any parcel of real property identified in a certificate of compliance filed pursuant to Section 66499.35 or identified in a recorded final map or parcel map, from and after the date of recording.

"The provisions of this section shall not limit or affect in any way the rights of a grantee or his successor in interest under any other provision of law."

■ While section 66499.33 does not preclude a local authority from seeking cancellation of a deed if that remedy is available from some other source, it does not itself confer authority on a local agency to void a transfer made in violation of the Act or on a court to declare a transfer to be void *ab initio*. (*Clemons v. City of Los Angeles* (1950) 36 Cal.2d 95, 104–105 [222 P.2d 439]; *City of Tiburon v. Northwestern Pac. R.R. Co.* (1970) 4 Cal.App.3d 160, 179–180 [84 Cal.Rptr. 469] (*City of Tiburon*), citing Bus. & Prof. Code, former §§ 11542 & 11540, the predecessor statutes to Gov. Code, §§ 66499.32 & 66499.33.) As held by this court in *City of Tiburon*, "It is concluded that the city is not entitled to an order setting the conveyances aside, and changing the recorded title to the land. This is not to say, however, that it is not, upon proper proof, entitled to a prohibitory injunction against either or both defendants to prevent the further conveyance of [parcels created by transfers violating the Act]." (*City of Tiburon, supra*, at p. 181.)[3]

■ The City suggests authority to cancel the grant deed may be found in Civil Code section 3412, providing, "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." There is a reasonable apprehension that the deed in question may cause serious injury to the City and to its citizens, but as discussed above, while the City is entitled to ignore the transfer and merge the parcels, the grant deed is not actually void or voidable by the City under the Act. The Uniform Fraudulent Transfer Act (Civ. Code, § 3439.01 et seq.) also is of no aid to the City, as it only provides a remedy to a creditor for the transfer of an interest when the transfer was made to prevent the creditor from reaching that interest. (Civ. Code, §§ 3439.04, 3439.07, subd. (a)(1); *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13 [33 Cal.Rptr.2d 283].)

In sum, the City has cited no statutory authority by which it was entitled to obtain an order cancelling the deed from Mr. Kalway to Mrs. Kalway. Mrs. Kalway, of course, has no right to further transfer title to the illegally created Mosswood Road Parcel except back to Mr. Kalway, and the City may be entitled to a prohibitory injunction against either or both of the Kalways to prevent the further conveyance of the parcel, and may be entitled to some remedy against Mrs. Kalway should she attempt to transfer the Mosswood Road Parcel to a third party, but those actions are not before us.

---

[3] Contrast the codes in New Jersey and Missouri, which expressly authorize municipalities to set aside a transfer or sale that violates those states' subdivision laws. (See N.J. Stat. § 40:55D-55(b); Mo. Rev. Stat. § 89.450.)

## CONCLUSION

The judgment is affirmed insofar as it denies the petition for writ of mandamus. It is reversed insofar as it purports to cancel the grant deed conveying title to the Mosswood Road Parcel from Mr. Kalway to Mrs. Kalway. Each party is to bear its own costs on appeal.

Marchiano, P. J., and Swager, J., concurred.