[No. A116848. First Dist., Div. One. Dec. 31, 2007.]

JOAQUIN VALENCIA et al., Plaintiffs and Respondents, v. COUNTY OF SONOMA et al., Defendants and Appellants.

COUNSEL

Steven M. Woodside, County Counsel, and Richard M. Flores, Chief Deputy County Counsel, for Defendants and Appellants.

Siegel & LeWitter, Jonathan H. Siegel and Latika Malkani for Plaintiffs and Respondents.

OPINION

**MARGULIES, J.**—Plaintiff Joaquin Valencia was terminated by his employer, a department of defendant County of Sonoma (County). Valencia appealed that decision to defendant County Civil Service Commission (Commission), which vacated his termination. The Commission, however, imposed alternative discipline that was not authorized by the memorandum of understanding (MOU) governing the terms and conditions of Valencia's employment. Valencia filed a petition for writ of mandate in the trial court challenging this discipline, contending that because the Commission was bound by the MOU it could impose only discipline consistent with the MOU. The trial court agreed and granted the writ. We affirm.

## I. BACKGROUND

Valencia is employed as an "Alcohol and Other Drug Services (AODS) Counselor II" by the County of Sonoma Department of Health Services (Department). On September 20, 2004, Valencia was given an order of termination by the director of health services as a result of alleged misconduct.

Valencia appealed his order of termination to the Commission. The Commission is an entity of the County, first created in 1939 "in order to establish an equitable and uniform procedure for dealing with personnel matters . . . ." (Sonoma County Code, § 21-1.) Pursuant to section 21-6 of the Sonoma County Code, the Commission "shall prescribe, amend and enforce rules for the classified service . . . [and] make investigations concerning the enforcement and effect of this article and of the rules and efficiency of the service." The same code section authorizes the Commission to make rules about, among many other topics, "promotion, demotion, transfer and reinstatement" of civil service employees. (Sonoma County Code, § 21-6,

subd. (n).) County Code section 21-12.1 permits those employees to appeal any "[d]ismissals, suspensions and reductions in rank or compensation" (boldface omitted) to the Commission.

Valencia's appeal was heard in August 2005. The Commission's proposed order vacated Valencia's dismissal, directed that he be restored to his position, and imposed as alternative discipline a limited suspension without pay and a temporary reduction in salary.

This discipline was consistent with that authorized by the MOU entered into by the County and respondent Engineers and Scientists of California, Local 20 (Union), the bargaining agent representing Valencia and other health professionals. The MOU had been approved by the Board of Supervisors of Sonoma County (Board) in February 2003. By its terms, the MOU, which is effective from June 24, 2003, through June 29, 2009, "constitute[s] the complete and full agreement of the parties concerning wages, hours, and other terms and conditions for employees in the bargaining unit."[1] Section 2.2 of the MOU defines "County," which is one of the parties, to include the County itself and "any of its organizational units or boards and commissions."

A representative of the county counsel's office appeared at a subsequent Commission meeting and asked the Commission to reevaluate its decision, arguing that the Commission had the discretion to impose any discipline less than the termination imposed by the County and that it should have imposed harsher discipline. The Commission agreed to reconsider and eventually issued a modified decision demoting Valencia from an AODS (Alcohol and Other Drug Services) counselor II to an AODS counselor I position and requiring him to serve a one-year probationary period. There appears to be no dispute that this discipline was in excess of that authorized by the MOU.[2]

Valencia and the Union filed a petition for writ of mandate in the superior court challenging the Commission's decision, arguing that the discipline

---

[1] Although the MOU contains a grievance and arbitration procedure, disciplinary appeals are expressly excluded from this procedure in favor of appeal to the Commission.

[2] Defendants characterize the trial court's decision as "requiring the Commission to comply with its [i.e., the trial court's] interpretation of the particularized language of a single MOU." They do not, however, argue that the trial court's interpretation of the MOU was erroneous or that the discipline ultimately imposed by the Commission was, in fact, consistent with the MOU. At a minimum, it appears that Valencia's reduction in salary under the decision will exceed 5 percent, while the MOU limits such reductions to 5 percent.

violated both the MOU and the Commission's own rules. The trial court adopted a statement of decision concluding that the Commission "abused its discretion and exceeded its jurisdiction by imposing a penalty that violated the [MOU]" and directing the Commission to set aside and reconsider its decision and, at its discretion, impose discipline consistent with the MOU.

## II. DISCUSSION

The County, the Board, and the Commission challenge the trial court's judgment, contending that the Commission did not abuse its discretion in imposing the harsher discipline because it was not limited by the MOU in determining the discipline to be imposed on Valencia.[3] "On questions of law arising in mandate proceedings, we exercise independent judgment." (*Kalway v. City of Berkeley* (2007) 151 Cal.App.4th 827, 832 [60 Cal.Rptr.3d 477].)

■ The parties entered into the MOU pursuant to the Meyers-Milias-Brown Act (Gov. Code,[4] § 3500 et seq.) (Act), which is intended to provide "a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500, subd. (a).) Pursuant to the Act, city and county employees are granted the right to join "employee organizations . . . for the purpose of representation on all matters of employer-employee relations." (§ 3502.) Representatives of the local government are required to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations" (§ 3505), and if these negotiations result in an agreement, the parties "shall jointly prepare a written memorandum of such understanding . . . and present it to the governing body or its statutory representative for determination" (§ 3505.1).

■ If approved by the governing body of the local agency, the MOU becomes a binding agreement between the employee organization and the local government. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 336 [124 Cal.Rptr. 513, 540 P.2d 609] (*Glendale*); *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 336 [34 Cal.Rptr.3d 635].)

---

[3] Although defendants contest the trial court's conclusion that the Commission was not permitted to discipline Valencia in a manner prohibited by the MOU, they do not otherwise take issue with the relief entered by the trial court.

[4] All further statutory references are to the Government Code.

In holding that an MOU approved by the local government is "indubitably binding" (*Glendale*, at p. 338), the *Glendale* court asked rhetorically, "Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance? What integrity would be left in government if government itself could attack the integrity of its own agreement? The procedure established by the act would be meaningless if the end-product, a labor-management agreement ratified by the governing body of the agency, were a document that was itself meaningless." (*Id.* at p. 336.) Once signed, the MOU cannot be abrogated by public referendum (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 778, 782 [35 Cal.Rptr.2d 814, 884 P.2d 645]) and is subject to the constitutional constraints on impairment of contracts. (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 314 [152 Cal.Rptr. 903, 591 P.2d 1].)

Defendants do not dispute that the County and the Union entered into an MOU pursuant to the Act and that the agreement is binding on the County with respect to the matters it addresses. Nor do defendants dispute that the MOU contains provisions that address the scope and type of discipline that may be imposed upon an employee covered by the MOU. Instead, defendants argue that, while the MOU might bind the Department in imposing discipline on Valencia, the Commission is not so bound when reviewing and revising that discipline.

The contention is contrary to logic and policy. It is contrary to logic because the Commission is merely a subunit of the County. If an agreement has been approved by the Board as binding on the "County," one would expect that the agreement would be binding on the various agencies of the County as well. The County, after all, normally operates through its various constituent agencies, just as a corporation operates through its employees. Indeed, this presumption is reflected in the text of the MOU, which, by defining "County" to include County commissions, purports to bind the Commission to the terms of the MOU.

The argument is contrary to policy because defendants' position on this appeal would render portions of the MOU illusory, thereby undercutting the preference for negotiated employment terms reflected in the Act. With respect to those portions of the agreement over which the Commission has jurisdic-

tion—notably, disciplinary appeals—defendants' argument implies that both the County and its employees are able to escape the negotiated, voluntary constraints the MOU would otherwise place on their conduct merely by appealing to the Commission, since the Commission is free to disregard those constraints. There is no doubt that such a result would undermine the procedures designed by the Legislature in the Act for the mutual "resol[ution of] disputes regarding wages, hours, and other terms and conditions of employment." (§ 3500, subd. (a).)

Defendants are therefore left to argue that the MOU, despite stating that it binds the Commission, and despite being rendered partially illusory if it does not bind the Commission, is nonetheless not so binding. Because the language purporting to bind the Commission was specifically approved by the Board, the argument is a particularly awkward one for this defendant. The Board is necessarily disavowing its own action, without ever explaining, or even acknowledging, that disavowal in its briefs on appeal.

In arguing that an agreement binding on the County is nonetheless not binding on the Commission, defendants rely largely on *Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249] (*LA County*). In *LA County,* the county civil service commission (CSC) held hearings concerning amendments to CSC rules governing layoffs and grade reductions. Although the CSC sent notice to the relevant public employee organizations and gave them an opportunity to comment on the proposed changes, it refused their demand that the CSC meet and confer pursuant to section 3505 regarding the proposed amendments. (*LA County*, at p. 60.) The CSC argued that its rules and activities were exempted from the Act by section 3500, which stated, " 'Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations.' " (*LA County*, at p. 62.)

In rejecting this argument, the court held, "The commission suggests that civil service rules carve out a particular area in employee-employer relations that should remain untouched by the meet-and-confer requirement. . . . The danger of undermining employee rights, though, is equally apparent if civil service commissions may freely and without negotiation alter the content of their rules. [¶] The [Act's] stated purpose to guarantee full communication

between employers and employees can hardly be met if the commission is not required directly to address employee concerns—concerns that frequently, of course, will be consistent with merit system principles. To carve out for the commission a unilateral authority over civil service rules would place an unjustifiable burden on public employees' right to representation. On the other hand, guaranteeing public employees an opportunity to have their views seriously considered (with the possibility that a nonbinding agreement will be adopted) serves employees' interests without destroying the commission's merit objectives." (*LA County, supra,* 23 Cal.3d at p. 63.)

On its face, this holding would appear to undercut defendants' position, for it emphasizes that CSC's, the traditional regulators of local government employment relations, are not insulated from the Act. On the contrary, the court held that "[t]o carve out for the commission a unilateral authority over civil service rules would place an unjustifiable burden on public employees' right to representation." (*LA County, supra,* 23 Cal.3d at p. 63.) Defendants, however, deduce from *LA County* the principle that "any proposed 'changes' to the civil service rules, in circumvention of the meet and confer obligations of [the Act], would have been void as a matter of law." In effect, defendants contend that because the MOU was adopted by the Board without the participation of the Commission, the Commission is not bound by the MOU.[5]

*LA County* establishes no such principle; the decision does not even hint, let alone hold, that the CSC must be involved in every meet-and-confer under the Act. Rather, it holds only that if a CSC undertakes to change rules affecting all public employees, it must meet and confer with the employees' unions before doing so. That does not imply that CSC's must *always* be consulted when changes are made to the terms and conditions of employment of local government employees. On the contrary, while the Act requires participation by the *employee organizations,* it says nothing about the involvement of local CSC's. The CSC was a party in *LA County* only because it was the agency that undertook to alter the terms and conditions of the county's employees without consulting employee organizations.

Defendants argue that "any proposed 'changes' to the civil service rules" brought about by the MOU would be void if not subject to a meet-and-confer

---

[5] Among the many problems with this argument, it is factually unsupported. We have been pointed to no evidence in the record reflecting how the MOU was negotiated. There is, therefore, no evidence to support defendants' contention that the Commission had no involvement in its negotiation and approval.

directly with the Commission. We need not address this argument, since the MOU does not change the Commission rules. The MOU establishes certain terms of employment applicable to the members of the Union, but these terms are effective only for the covered employees and only for the approved duration of the MOU. They are not amendments to the civil service rules. Further, defendants do not point to a single provision of the MOU that is in conflict with Commission rules.[6] There is simply nothing in *LA County* that supports defendants' present argument.

Defendants also argue that "a local civil service commission . . . has autonomous stature distinct from a county's corporate identity. . . . [¶] The nature of this autonomy is such that it is the Commission . . . that has been delegated the authority to determine the scope and breath [*sic*] of personnel rules governing civil service employees . . . . This authority is personal to the Commission and is not jointly held by the County." Neither case cited by defendants, *Department of Health Services v. Kennedy* (1984) 163 Cal.App.3d 799 [209 Cal.Rptr. 595] (*Kennedy*) and *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210 [282 Cal.Rptr. 240] (*Talmo*), supports the claim that a CSC has "personal" authority that is not subject to the overarching power of the board of supervisors.

In *Kennedy,* the CSC contended that the petitioner department lacked standing to file a petition for a writ of mandate challenging discipline imposed by the CSC on one of the department's employees. (*Kennedy, supra,* 163 Cal.App.3d at p. 801.) In concluding that the department did have standing, the court noted that "courts long have drawn a distinction between the county as a corporate entity and the autonomy of various elements of a county's governmental structure. For example, the board of supervisors has been recognized as an autonomous legislative body entitled in its own right to join the county in a mandamus proceeding against a county officer, the assessor. [Citation.] . . . The same principle has been applied to bodies created by county ordinance which exercise a quasi-judicial function.

---

[6] For this reason, the Supreme Court's recent decision in *Consulting Engineers & Land Surveyors of California, Inc. v. Professional Engineers in California Government* (2007) 42 Cal.4th 578 [67 Cal.Rptr.3d 485, 169 P.3d 903], is inapposite. In *Consulting Engineers,* the court considered an MOU between the state and a group of employees that contained a provision precluding the state from contracting privately for the type of work done by the employees. (*Id.* at pp. 582–583.) The court nullified the provision, concluding it was in conflict with a constitutional amendment expressly authorizing the private contracting of such work. (*Id.* at pp. 588–589.) Defendants point to no provision in the MOU that is in conflict with the Commission's rules. Rather, defendants claim the authority to disregard the MOU altogether.

[Citation.] [¶] . . . The Los Angeles County Civil Service Commission is a charter agency exercising quasi-judicial powers delegated by the county charter. [Citation.] Therefore, it has the same autonomous stature, distinct from the county's corporate identity . . . . Given the Commission's autonomous nature and the Department's beneficial interest in the Commission's actions, there is no barrier to the Department initiating a mandamus proceeding, as an executive arm of the corporate county, against the Commission." (*Id.* at p. 802.) *Talmo* merely acknowledged the holding of *Kennedy* that "the civil service commission is autonomous in nature and distinct from the county's corporate identity" while holding that, nonetheless, the county had standing to appeal a trial court decision rendered against the CSC. (*Talmo, supra*, 231 Cal.App.3d at p. 223.)

As these descriptions make clear, neither *Kennedy* nor *Talmo* holds that a county CSC has "personal" rights that are not subject to the authority of the board of supervisors. Both merely hold that a CSC has a legal existence sufficiently separate from that of the County to grant the Commission standing to engage in litigation as a distinct entity.

There is no reason in policy, and defendants advance no such reason, for extending the holdings of these cases further. The precise scope of the Commission's authority with respect to the terms and conditions of employment of County employees is a matter to be determined by the County, in particular by the Board. The Commission's "autonomous nature" (*Kennedy, supra*, 163 Cal.App.3d at p. 802) does not provide it with a source of power separate and apart from the power granted it by the Board. It certainly does not, as claimed by defendants, provide an absolute guarantee of "authority to determine the scope and breath [*sic*] of personnel rules governing civil service employees."

■ In short, defendants have advanced no argument demonstrating that the Commission, an agency of the County, is not bound by an agreement that was entered into on behalf of the County by its governing body and that expressly lists the Commission as one of the entities bound by its terms.[7]

---

[7] Valencia and the Union also contend that the Commission's action violated its own rules regarding discipline. Because we agree that the Commission was not permitted to render discipline at variance with the MOU, there is no need to address the alternative argument.

## III.  DISPOSITION

The trial court's judgment is affirmed.

Marchiano, P. J., and Swager, J., concurred.