Filed 10/4/21  Lion Farms v. Cal Occupational Safety and Health etc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LION FARMS, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,<br><br>Defendant and Respondent.<br><br>CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,<br><br>Real Party in Interest and Respondent. | F079563<br><br>(Super. Ct. No. MCV075788)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Law Offices of Brian C. Leighton and Brian C. Leighton; Bertram T. Kaufmann for Plaintiff and Appellant.

J. Jeffrey Mojcher, Andia Farzaneh, Autumn Gonzalez and Aaron R. Jackson for Defendant and Respondent.

Christopher P. Grossgart and Deborah A. Bialosky for Real Party in Interest and Respondent.

-ooOoo-

Real party in interest and respondent, the California Department of Industrial Relations, Division of Occupational Safety and Health (the Division) cited plaintiff and appellant Lion Farms, LLC (Lion) for violations of workplace safety regulations. The regulations required a workplace hazard evaluation certified in writing and the identification and use of situationally appropriate personal protective equipment (PPE). The investigation leading to the citations followed the death of a Lion employee while using an all-terrain vehicle (ATV) on the job. The Division also imposed a $18,560 combined penalty on Lion for those violations. Lion contested the citations and penalties before defendant and respondent the California Occupational Safety and Health Appeals Board (the Board).[1] The Board affirmed the citations and penalties generally, though it reduced the combined penalty to $14,625. Lion then filed a petition for a writ of administrative mandate in the Madera County Superior Court (the trial court). The trial court ultimately denied Lion's petition for a writ of administrative mandate. Lion now appeals from that judgment, and contends the trial court applied an improper standard of review of the Division's decisions, incorrectly denied Lion's belated due process-based argument, and erroneously disallowed Lion's invocation of the independent employee action defense. Finding the trial court properly denied Lion's petition for writ of administrative mandate, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lion owned and operated a dried-on-the-vine raisin vineyard in Madera County (Cottonwood Ranch), at which Lion's employee Isaac Rey Barrientos worked. On June 10, 2015, Barrientos was killed when he lost control of the Lion-owned ATV he was

---

[1] The Division and the Board are two separate administrative agencies. The Board has responsibility for resolving appeals filed by parties related to citations issued by the Division. (Lab. Code, §§ 6600, 6600.5; *Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1027 (*Rick's Electric*).) The Division was the real party in interest in the underlying writ proceedings in the trial court. The Board was the respondent in the underlying writ proceedings.

2.

riding in the vineyard to service Lion's portable toilets, and the ATV's right front tire hit an eye ring grape stake, ejecting Barrientos off of the vehicle. The June 12, 2015, Merced County Sheriff's Office Report of Autopsy and the Madera County Certificate of Vital Record listed "blunt impact thoracospinal injuries" (not a head injury) as Barrientos's cause of death. Barrientos was not wearing a helmet at the time of his fatal accident.

Division Associate Safety Engineer Randy Chase thereafter investigated Barrientos's accident. Chase knew of a number of fatalities occurring in the Fresno Division involving ATV's, including one fatality investigated by his office where a helmet was not worn and head injuries occurred. While Barrientos's death was not due to the absence of head protection, Chase found that wearing helmets while riding ATV's would reduce the inherent risk of head injury. However, Chase also found that Lion had no written certification of having conducted a workplace hazard assessment and no requirement that its employees wear helmets as PPE while riding ATV's.

On October 16, 2015, based on Chase's investigatory conclusions, the Division cited Lion for violating the Division's workplace safety regulations set forth in title 8 of the California Code of Regulations[2]—specifically, section 3380, subdivision (f)(2) (hereafter section 3380(f)(2)), for not having a written certification of a workplace hazard assessment (the General Citation), and section 3380, subdivision (f)(1)(A) (hereafter section 3380(f)(1)(A)), for not selecting and requiring the use of the types of PPE that would protect the affected employees from the hazards identified in a workplace hazard

---

[2] The Division promulgated its workplace safety regulations in subchapter 7 of chapter 4 of title 8 of the California Code of Regulations, under "General Industry Safety Orders."

All subsequent code or section references are to the California Code of Regulations, title 8 ("Industrial Relations"), unless otherwise specified.

3.

assessment (the Serious Citation), specifically helmets while employees rode ATV's.[3] The Division fined Lion $560 for the General Citation and $18,000 for the Serious Citation.

On October 26, 2015, Lion challenged the citations and the penalties by filing an appeal with the Board.

Thereafter, the parties conducted mutual discovery. Lion engaged the services of a retained industrial safety expert, William D. Guentzler, Ph.D., who opined in his prepared report that a helmet would represent a hazard in itself and should never be worn while riding an ATV in and under the raisin vine "canopy" of hanging fruit and canes, as a helmet would "most probably become tangled within the vines and pull the rider off the vehicle, causing severe injury or death."

On October 27, 2016, and March 2, 2017, the Board conducted hearings before Administrative Law Judge Kevin J. Reedy (the ALJ) on Lion's challenges to the Division's two citations and two penalties against Lion. Following the hearings, the ALJ upheld the citations, and particularly the "serious" classification of the second citation, but did reduce the amount of the penalties imposed to $14,625 ($1,125 for the General Citation, and $13,500 for the Serious Citation).

On May 17, 2017, Lion filed a petition for reconsideration with the Board.

On June 30, 2017, the Board denied Lion's petition for reconsideration and affirmed the Division's two workplace safety citations of Lion.

On July 28, 2017, Lion filed its verified petition for writ of administrative mandate with the trial court, and lodged trial exhibits in support thereof, naming the Board as the sole defendant.

---

[3]     Sections 3380(f)(2) and 3380(f)(1)(A) fall under the code's "Safe Practices and Personal Protection; Personal Protective Devices" group of "General Industry Safety Orders."

4.

On November 21, 2017, Lion obtained leave from the trial court and filed its first amended verified petition, adding the Division as a real party in interest and additional defendant.

On November 21, 2017, November 2, 2018, and February 8, 2019, following briefing by the parties, the trial court held hearings on Lion's first amended verified petition for writ of administrative mandate.

The trial court issued its tentative decision on March 26, 2019, denying Lion's petition for writ of administrative mandate pursuant to California Rules of Court, rule 3.1590(c)(1).

On April 10, 2019, Lion objected to the trial court's tentative decision, which objections were considered by the trial court.

On April 23, 2019, the trial court overruled all of Lion's objections to the tentative decision.

On May 23, 2019, after hearing and considering the evidence presented, the administrative record, and the arguments of counsel, the trial court denied Lion's petition for writ of administrative mandate. The tentative decision became the court's final decision.

On June 7, 2019, the trial court issued its notice of entry of judgment on Lion's petition for writ of administrative mandate.

On June 25, 2019, Lion filed its notice of appeal.

## DISCUSSION

Lion contends that for several reasons the record in the instant case reveals the trial court improperly denied Lion's petition for writ of administrative mandate and improperly upheld the Division's imposition of its citations and penalties on Lion. Broadly, Lion claims that it was wrongfully denied an opportunity to assert as a defense to the District's citations the allegation that section 3380 of the subject workplace safety regulations—as applied—was violative of Lion's substantive due process rights because

5.

it was unconstitutionally vague and ambiguous. Lion also claims that the penalties imposed on it by the Division were excessive. Finally, Lion claims that it should have been able to assert the independent employee action defense to the citations it received. As a threshold matter, we must determine the appropriate standard of review to be utilized in our review of all of the Board's (and trial court's) decisions. We then turn our attention to the substance of Lion's arguments.

## I.       Standard of Review

Lion contends we must apply the de novo standard of review to all of the issues he raises on appeal. We disagree.

### A.       Law

It is settled that pure questions of law, such as the constitutional validity of a statute, are reviewed de novo. (*Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 781.) When considering a claim that a facially valid statute has been applied in a constitutionally impermissible manner, "the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) A substantive due process violation "requires more than 'ordinary government error,' and the ' " 'arbitrary and capricious' " ' standard applicable in other contexts is a lower threshold than that required to establish a substantive due process violation." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 855–856.) "Determining if the trial court adhered to a constitutional principle is solely a question of law." (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 610.)

Petitions for writ of administrative mandate, however, are not always subjected to de novo review. (See *Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 814, fn. 6.) Code of Civil Procedure section 1094.5, the state's administrative mandate statute, governs judicial review of adjudicatory decisions by administrative agencies, such as the Board in this case. (*Young v. City of Coronado*

6.

(2017) 10 Cal.App.5th 408, 418.) The standard of review in the trial court and on appeal on petition for writ of administrative mandate may be either substantial evidence or de novo, depending on the nature of the right affected by the administrative decision in question. (Code Civ. Proc., § 1094.5 subd. (c); *Akella*, at p. 814, fn. 6.) If the decision of an administrative agency will substantially affect a " 'fundamental vested right,' " then the trial court must not only examine the administrative record for errors of law, but must also apply the de novo standard to the evidence on petition for writ of administrative mandate. (*Akella*, at p. 814, fn. 6.) Where a fundamental vested right is not implicated, however, "[w]e review the factual basis behind the agency's order or decision for 'substantial evidence in … light of the whole record.' " (*Id.* at pp. 813–814, citing Code Civ. Proc., § 1094.5, subd. (c).) "An abuse of discretion is established if the administrative agency has failed to proceed 'in the manner required by law, [or] the [agency's] order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Akella*, at p. 813.)

In applying the substantial evidence standard of review, we focus on the decision of the agency rather than that of the trial court and " ' "answer the same key question as the trial court[:] … whether the agency's findings were based on substantial evidence." ' " (*Colony Cove Properties, LLC v. City of Carson* (2013) 220 Cal.App.4th 840, 866.) This requires the reviewing court to consider all relevant evidence in the administrative record and view that evidence in the light most favorable to the agency's findings, drawing all inferences in support of those findings. (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1490.) The reviewing court does not substitute its own findings and inferences for that of the agency. (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921.) "Only if no reasonable person could reach the conclusion reached by the administrative agency, based on the entire record before it, will a court conclude that the agency's findings are not supported by substantial evidence." (*Do*, at p. 1490; accord *McAllister*, at p. 921.) "[N]either [the

7.

trial nor the appellate] court may reweigh the evidence, and we are bound to consider the evidence in the light most favorable to the Board, giving it every reasonable inference and resolving all conflicts in its favor." (*Stanton v. State Personnel Board* (1980) 105 Cal.App.3d 729, 736.)

Further, an agency's interpretation of its own regulations is entitled to "great weight"; " ' "[w]e must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable." ' " (*Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 244; accord, *Rick's Electric*, *supra*, 80 Cal.App.4th at p. 1033.) " ' " 'Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value.' [Citation.] Additionally, a reviewing court 'may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence.' " ' " (*Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1440 (*Sandarg*).)

As the appellant, Lion bears the burden of proof of establishing its asserted errors on appeal. (Evid. Code, § 500; *Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 16.) But we must affirm the trial court's ruling if there is any basis in the record for doing so. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 966.) "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

**B.     Analysis**

Lion's due process claim on appeal—his assertion that section 3380 (particularly with respect to PPE required in the context of ATV usage in agricultural settings), as

8.

applied on the facts and circumstances of this case violated Lion's substantive due process protections because the regulations were unconstitutionally vague and ambiguous—is a question of law that we review de novo when the facts are undisputed. (See *Conservatorship of Christopher A.*, *supra*, 139 Cal.App.4th at p. 610.)

As for all of Lion's remaining issues, however, we conclude the substantial evidence standard of review, rather than the de novo standard of review, is most appropriate because they are not pure questions of law and because Lion has not identified a fundamental vested right that is affected by the administrative decisions of the Division or the Board. Perhaps the prototypical fundamental vested right recognized by California courts as such is the right to practice one's profession. (*Sandarg*, *supra*, 184 Cal.App.4th at p. 1440; see *Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 795.) In this case, no such fundamental vested right akin to the right to practice one's profession is implicated by the Division's decisions regarding Lion's workplace safety regulation noncompliance. Certainly, Lion's ability to continue its operations as a vineyard was never jeopardized by any of the Division's citations or penalties. Lion never adduced any evidence that the Division's proposed penalties would deprive Lion of a fair profit or annihilate the value of Lion's property or deprive Lion of its use or value or otherwise become confiscatory in nature. Lion asserts that it has a fundamental vested right to be free of unwarranted citations and excessive penalties, but tellingly does not provide any authority for such an alleged fundamental vested right, let alone past examples of the same being judicially recognized. The term "fundamental vested right" denotes a right that is already possessed as opposed to a right that is merely sought. (*Kalway v. City of Berkeley* (2007) 151 Cal.App.4th 827, 832.) The mere fact that Lion strongly disagrees with the Division's analysis and citations does not elevate the level of the dispute to one involving a fundamental vested right. Additionally, matters of purely economic concern (e.g., the amounts of penalties levied for regulatory violations) do not amount to fundamental vested rights that trigger the de novo standard

9.

of review.  (*Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 828–829.)

Lion's contention on appeal that de novo review is "a more appropriate standard of review of an agency's interpretation of a statute, and the same should apply to a regulation" is itself an admission that Lion seeks to extend its cited authority, *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, by analogy, rather than by precedent. Neither of Lion's assertions is persuasive; the issues in this case, while certainly important to Lion, do not in and of themselves constitute any fundamental vested right. Moreover, *Cohen*, which Lion relies on to support a "weak deference" standard of review, itself relied on the decision of *Spanish Speaking Citizens' Foundation v. Low* (2000) 85 Cal.App.4th 1179, which dealt not with a straightforward regulatory interpretation, but rather with the question of whether a regulation was consistent with its authorizing statute.  That is a factual distinction that makes an analytical difference.  The type of statutory construction that was at issue in the *Cohen* and *Low* cases is simply not the type of statutory interpretation that is at issue in the instant case.  Consequently, the substantial evidence standard of review is most appropriate in this instance.  (*Malibu Mountains Recreation, Inc.  v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 367.)

## II.    Due Process Claim

Lion contends section 3380 was unconstitutionally vague and ambiguous, as applied to Lion, because the Board and the trial court interpreted the regulation in a manner that failed to provide Lion with notice that helmets for ATV drivers were mandated by the regulation.  Lion claims it effectively raised this due process claim before the Board, and thus preserved the issue in both the trial court and this court.  The trial court ruled Lion did not and was therefore statutorily precluded from raising the claim at the trial court level.  We agree with the trial court.  We further conclude Lion forfeited the issue in this court, and in any event, the claim is meritless.

## A.    Forfeiture in the Trial Court

Labor Code sections 6614 through 6619 establish the bases and procedures for filing petitions for reconsideration with the Board.  Labor Code section 6617 is relied upon by all parties to this matter.  Labor Code section 6617 states in full:

"The petition for reconsideration may be based upon one or more of the following grounds and no other:

"(a) That by such order or decision made and filed by the appeals board or hearing officer, the appeals board acted without or in excess of its powers.

"(b) That the order or decision was procured by fraud.

"(c) That the evidence does not justify the findings of fact.

"(d) That the petitioner has discovered new evidence material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing.

"(e) That the findings of fact do not support the order or decision."

Lion contends that a challenge to the Board's decision based upon a violation of the substantive due process rights of Lion would have been beyond the ambit of challenges allowed by Labor Code section 6617; however, subdivision (a) thereof would have allowed such a challenge, had Lion taken it up by way of its petition for reconsideration.  Axiomatically, any decision by the Board or a hearing officer applying a statute in violation of the due process clause would be a decision in excess of the powers of the Board or a hearing officer.  The substantive due process clause on which Lion relies protects against arbitrary government action.  (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 845, abrogated on other grounds by *Saucier v. Katz* (2001) 533 U.S. 194.)  A substantive due process violation requires some form of outrageous or egregious conduct constituting "a true abuse of power."  (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1032.)  Inherently, if a governmental actor is engaged in some form of

11.

outrageous or egregious conduct constituting a "true abuse of power," such conduct would be in excess of the scope of that governmental actor's legitimate powers.

In addition to Labor Code section 6617, Labor Code section 6616 is instructive on the scope of issues to be presented by way of a petition for reconsideration of a hearing officer's decision. Labor Code section 6616 states in pertinent part: "The petition for reconsideration shall set forth *specifically and in full detail* the grounds upon which the petitioner considers the final order or decision made and filed by the appeals board or a hearing officer to be unjust or unlawful, *and every issue to be considered by the appeals board.*" (Italics added.)

By the admission of Lion's own counsel, "the due process stuff" was not contained in Lion's petition for reconsideration before the Board. Lion attempts to explain this failure to present the due process issue to the Board by claiming it would have been futile for Lion to raise any due process claims before either the ALJ or the Board because neither had the authority to declare section 3380 unconstitutionally vague or a violation of Lion's substantive due process rights as applied. This claim is unavailing as it is predicated upon an incorrect reading of the ambit of the authority of both the ALJ and the Board. Regulatory entities, such as the ALJ and the Board, are vested with the authority to declare regulations such as section 3380 to be unconstitutional. "[O]n principle, an *invalid* regulation *should* be vulnerable to attack at the administrative level. This is consistent both with precedent and common sense. The legislative acceptance of this principle is clear." (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 680.) "The practical effect of prohibiting an administrator from nullifying an invalid regulation of his own making would be to require the invocation of a judicial remedy in all such cases. Such conceptual rigidity is ill-advised. The general principle that courts should not be burdened with matters which can be adequately resolved in administrative fori, frequently expressed in the rule requiring exhaustion of administrative remedies [citations], is founded at least in part on the wisdom of the

12.

efficient use of governmental resources. [Citation.] Such use serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights." (*Id.* at pp. 680–681.) Administrative law judges have a right (indeed, at times a duty) to declare regulations adopted by administrative agencies such as the Division invalid. (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 761.)

Lion is correct that the California Constitution, Article III, section 3.5 states that "[a]n administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] … [¶] (b) To declare a statute unconstitutional." Section 3380, however, is not a statute; it is a regulation, as it resides in the California Code of Regulations, and not in a substantive or procedural code. Regulations may interpret statutes, but regulations are legally distinct from statutes. (*Missionary Guadalupanas of Holy Spirit, Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 432–433.) Statutes are passed by legislatures; regulations are promulgated by administrative agencies. Regulations are not statutes, and the fact that both may properly be regarded as "laws" in a broad sense is not germane to the question of whether an administrative board can declare an administrative regulation promulgated by a regulatory agency (i.e., the same branch of government) unconstitutional when such a regulatory board cannot declare a statute enacted by a legislature (i.e., a separate branch of government) unconstitutional. A court could certainly review the ruling of an administrative board regarding the constitutionality of an administrative regulation, but that does not preclude the administrative board from being able to make such a ruling in the first place.

Accordingly, here, the Board did have the authority to evaluate and opine as to the constitutionality of section 3380, had it been asked to do so by Lion. The Board, however, was not asked to do so by Lion in its petition for reconsideration. In addition to the words "due process" themselves not being utilized by Lion in its petition for reconsideration, the substance of Lion's arguments against the citations at that juncture

13.

did not inherently or inevitably invoke the concept of substantive due process, as Lion suggests.

Since Lion did not effectively raise any due process claims before the Board when it could have done so, Lion's pleadings before the trial court were (as the trial court correctly held) untimely and insufficient to invoke any due process claims Lion might otherwise have asserted in that forum as well.

## B.    Forfeiture on Appeal

Lion argues that even if it failed at both the Board and trial court levels to raise the due process claim, Lion may do so for the first time on appeal. We disagree and conclude Lion has forfeited the issue here as well.

A party typically forfeits constitutional issues not raised in earlier civil proceedings. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 254, superseded by statutory amendment on other grounds in *V.S. v. M.L.* (2013) 222 Cal.App.4th 730, 735, fn. 5.) More particularly, in the administrative law context, Labor Code section 6618 provides that issues not raised in a petition for reconsideration are waived. Specifically, Labor Code section 6618 states that a "petitioner for reconsideration *shall be deemed to have finally waived all objections, irregularities, and illegalities* concerning the matter upon which reconsideration is sought other than those set forth in the petition for reconsideration." (Lab. Code, § 6618; italics added.) Lion regards Labor Code section 6618 as a "valid code section," but contends that Lion actually raised a substantive due process argument via its petition for reconsideration before the Board. In doing so, Lion tacitly acknowledges that if it did not in fact raise the due process argument via its petition for reconsideration, section 6618 would operate to foreclose Lion from raising its due process argument for the first time on appeal, via its reply brief to the trial court. By Lion's own admission, however, it raised no due process argument via its petition for reconsideration; section 6618 therefore

14.

operates to foreclose Lion from raising its due process argument for the first time on appeal. The Board and the trial court were correct in so ruling against Lion.

### C. The Claim on its Merits

Even assuming arguendo Lion did not forfeit the claim that section 3380 was unconstitutionally vague and ambiguous as applied, we conclude the claim is nevertheless without merit.

An administrative regulation violates due process of law if it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 763–764, citing *Connally v. General Const. Co.* (1926) 269 U.S. 385, 391.) Moreover, the regulation cannot be "unreasonable, arbitrary, or capricious" and "the means selected shall have a real and substantial relation to the object sought to be attained." (*Nebbia v. New York* (1934) 291 U.S. 502, 525.) In considering a vagueness challenge to an administrative regulation, we do not view the regulation in the abstract; rather we consider whether it is vague when applied to the complaining party's conduct in light of the specific facts of the particular case. (*Cranston*, at p. 765.) A regulation is not unconstitutionally vague simply because alternative constructions may be proposed. (*People v. Anderson* (1972) 29 Cal.App.3d 551, 561.) Standards under a regulation may be refined and developed on a case-by-case basis. (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 367.) " '[T]his is neither unusual nor unconstitutional.' " (*Ibid.*)

Where, as here, we review the interpretation and application of an administrative regulation by the regulatory agency charged with enforcing the regulation, we must respect the subject matter expertise of the agency. (*Lusardi Construction Co. v. California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 645 (*Lusardi*).) The agency's interpretation of the regulation at issue must be upheld unless it

is clearly erroneous or unauthorized. (*Ibid.*) Under these standards, we are compelled to reject Lion's contentions of unconstitutional vagueness and ambiguity.

In *Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, a construction company challenged section 1592, subdivision (e) (like section 3380, a workplace safety regulation) on the basis that it was unconstitutionally vague and ambiguous (the same basis upon which Lion here challenges section 3380). The *Teichert* court embraced the following standards when evaluating whether a statute violated due process: (1) a statute violates due process if it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application; (2) in considering a vagueness challenge to an administrative regulation, a reviewing court does not view the regulation in the abstract, rather, it considers whether it is vague when applied to the complaining party's conduct in light of the specific facts of the particular case; (3) a regulation is not unconstitutionally vague simply because alternative constructions may be proposed (because standards under a regulation may be refined and developed on a case-by-case basis); (4) where a reviewing court reviews the interpretation of a regulation by the board charged with enforcing the regulation, the reviewing court must respect the subject matter expertise of the board. (*Teichert*, at pp. 890–891.)

Under *Teichert*'s standards, the Board's interpretation of section 3380 must be upheld. Section 3380(f)(1)(A)'s requirement that employers assess their workplaces to determine if hazards necessitating the use of PPE are present or likely to be present (and if such a determination is affirmatively made, select and make available the types of PPE that will protect affected employees from the hazards identified in the workplace assessment) is not impermissibly vague. A reasonable and practical construction of the regulation puts businesses like Lion that have employees who utilize ATV's in the workplace on notice that (1) they must protect their employees from the hazards inherent

16.

in riding ATV's, and (2) requiring helmets be worn when employees ride ATV's is an efficacious and obvious way of affording employees such protection. Lion could (and should) have known with the exercise of reasonable diligence of the intrinsic head injury hazards of riding ATV's in agricultural settings, and that protective helmets would be an evident way to protect employees from such head injuries.

The fact that Barrientos's lack of a helmet would not have protected him from death in the circumstances of the accident which claimed his life is immaterial to the issue of whether it is reasonable or not to interpret section 3380(f)(1)(A) as requiring helmets be worn by ATV riders in agricultural workplace settings. Instead, it is the general risk of serious injury or death inherent in not requiring helmets to be worn by ATV riders in Lion's farmlands and vineyards that underlies the Board's finding of a "serious" violation of section 3380(f)(1)(A). Lion was not cited for Barrientos's death; it was cited for failing to establish a PPE requirement that would adequately protect its employees who rode ATV's on the job from injuries that could be mitigated or prevented by the wearing of helmets (e.g., head injuries, abrasions, and cuts).

Moreover, if as Lion asserts, the regulation at issue really was as "extremely vague and ambiguous" as claimed, while at the same time being applicable to "millions of employers in California," including regarding "the use of ATVs on the thousands of farms in California," then it stands to reason that this issue of an alleged lack of due process fair notice would have been raised (and resolved) at some point over the period of years since 1974 that section 3380 has been the law of California. Caselaw is devoid of any such issue being resolved in that manner, however. This strongly suggests that no such assertions have historically been upheld regarding section 3380, which in turn suggests a lack of merit to such claims.[4]

---

[4] Of note, California's Mandatory Motorcycle Helmet Law, Vehicle Code section 27802 et seq., has been repeatedly challenged as unconstitutionally vague, and

We also find section 3380(f)(1)(A) to be reasonable, and neither arbitrary nor capricious as applied; we further find that the means it utilizes have a real and substantial relation to the object sought to be attained, namely, workplace safety. (See *Nebbia v. New York*, *supra*, 291 U.S. at p. 525.)

Thus, even if Lion's due process claim regarding section 3380(f)(1)(A) had been properly presented to the trial court, it would not have been successful.

## III.    Amounts of Penalties and Characterization of Violation as "Serious"

On appeal, Lion challenges both the amounts of the penalties that were ultimately levied against it by the Division for the General and Serious Violations, as well as the characterization of Lion's violation of section 3380(f)(1)(A) as "serious." We find that substantial evidence supports both of the penalties and the characterization of the section 3380(f)(1)(A) violation as "serious," and therefore we reject Lion's challenges in this regard.

### A.    General Violation of Section 3380(f)(2)

Lion objects to the amount of the penalty for the General Violation of section 3380(f)(2), which was originally $560, then increased by the Board to $1,125.

Section 3380(f)(2) states in pertinent part: "The employer shall verify that the required workplace hazard assessment has been performed through a written certification that identifies the workplace evaluated; the person certifying that the evaluation has been performed; the date(s) of the hazard assessment; and, which identifies the document as a certification of hazard assessment."

Substantial evidence in the record demonstrates that Lion failed to verify through a written certification that it had performed a workplace hazard assessment related to the operation of ATV's at its worksites. By Lion's own admission, in fact, it did not have a

---

has been consistently upheld in the face of such challenges. (*People v. Elkins* (1992) 12 Cal.App.4th Supp. 1, 5–6; *Buhl v. Hannigan* (1993) 16 Cal.App.4th 1612, 1622–1623.)

written workplace hazard assessment certification, as required by section 3380(f)(2). Lion conceded that even its ATV safety training acknowledgement did not comply with section 3380(f)(2) and did not constitute a "written certification" as required by that regulation. Logoluso, Lion's ranch manager, claimed that he had prepared some sort of written job hazard assessment for Lion in 2005, but could not recall at the hearing the last time he had seen such a document. Consequently, Lion has conceded that it violated section 3380(f)(2), and that, regarding the General Citation, it is only the amount of the penalty that Lion is challenging, not the imposition of the citation itself.

Division Associate Safety Engineer Chase initially assessed the penalty for Lion's violation of section 3380(f)(2) at $560, based upon Chase's experience that general violations with a rated "medium" severity historically carried a penalty of $1,500, which amount was then reduced by a stipulated 15 percent for Lion's demonstrated good faith, as well as an additional stipulated 10 percent based on Lion's history of a lack of safety citations, plus an employer abatement credit of $565. Upon review, the Board increased this monetary penalty, to the current $1,125 by virtue of Lion's failure to provide the Division with the necessary proof of abatement to warrant the $565 reduction of the penalty. Chase explained at great length and in great detail during the Board's hearing on this matter how he calculated the amount of the penalty for Lion's General Citation, and the Board explained in great length and detail its rationale for its increase of the penalty.

As we have noted, the Board's interpretation of a particular regulation has great weight on appeal, and will be followed unless it is clearly erroneous. (*Davey Tree Surgery Co. v. Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1243; *Lusardi, supra*, 1 Cal.App.4th at p. 645.) This deference is based on the specialized knowledge the Board possesses. (*Davey Tree*, at p. 1244.) Courts must therefore respect the Board's interpretation of these regulations. (*Overaa Construction v. California Occupational Safety & Health Appeals Bd.*, *supra*, 147 Cal.App.4th at p. 245.)

In this case, substantial evidence supported the analysis and conclusions of the Division with respect to its characterization of Lion's violation of section 3380(f)(2) as "general," and the $560 in penalties it levied for such violation, as well as the Board's disallowing of the $565 abatement credit in light of no demonstrated abatement efforts by Lion. (Code Civ. Proc., § 1094.5, subds. (b), (c).) Further, we find nothing in the factual record or in the arguments of counsel sufficient to disturb the considered opinion of both the Board and the trial court that the $560 amount of the penalty initially assessed by the Division against Lion for the General Violation of section 3380(f)(2) was insufficient under all of the relevant circumstances, and their conclusion that a penalty of $1,125 was more appropriate under the circumstances, given Lion's manifest lack of abatement efforts.

### B. Serious Violation of Section 3380(f)(1)(A)

Lion also contests the Division's classification of its violation of section 3380(f)(1)(A) (for not requiring helmet usage among Lion's employees riding ATV's in the course of their work) as "serious." Lion contends that its violation did not rise to the level of a "serious" violation and therefore the $13,500 penalty (reduced from $18,000 by the Board) ultimately assessed for that violation was inappropriate. For the reasons below, we disagree.

Section 3380(f)(1)(A) states:

> "(f) Hazard assessment and equipment selection.

> > "(1) The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, or likely to be present, the employer shall:

> > > "(A) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment."

If the Division demonstrated that there was a realistic possibility that death or serious bodily harm could result from the actual hazard created by the violation in question, then that created a rebuttable presumption that a "serious violation" of the regulation had occurred.  (Lab. Code, § 6432.)  As we have previously noted, a "serious violation" under Labor Code section 6432 is broadly defined, and "almost any dangerous condition could constitute a serious violation."  (*Salwasser Manufacturing Co. v. Municipal Court* (1979) 94 Cal.App.3d 223, 230, fn. 4.)

There is in this case substantial evidence in the administrative record to support the Board's findings and conclusion that Lion's violation of section 3380(f)(1)(A) was "serious," and to support the amount of the penalty for the Serious Violation, as well as to support the trial court's endorsement of such findings.

Regarding the potentially serious nature of accidents involving un-helmeted ATV riders in agricultural settings, such as Lion's on-the-vine raisin vineyard, the Division's Associate Safety Engineer Chase, who possessed particularized expertise and training in workplace safety, knew of and cited to a number of fatalities occurring in the Fresno Division involving ATV's, including one fatality investigated by his office where a helmet was not worn and head injuries occurred.  Requiring employees to wear helmets while riding ATV's would patently ameliorate, if not eliminate, the inherent head injury risks of such ATV-related accidents.  Furthermore, in Chase's professional view, no danger would be posed to ATV riders wearing helmets in cane or fruit rows.  Conversely, Lion's own retained workplace safety expert, Guentzler, did not contest Chase's testimony regarding ATV-related fatalities, and admitted he knew of no instance in which a helmet-wearing ATV rider had gotten such a helmet caught on the fruit or the canes of a vineyard, and been injured thereby.  Nor did Guentzler provide any examples of agricultural workers suffering illness or injury (such as heatstroke) because they wore helmets while using ATV's in that setting.

21.

Moreover, the documentary record of this case is replete with warnings from the ATV's manufacturer and others alike of the general risk of serious injury to those persons riding an ATV without a helmet. The subject ATV's owner's manual prominently stated (under the heading of "Important Safety Information") that ATV riders should "[a]lways [w]ear a [h]elmet." That admonition was accompanied by the explanation that "[i]t's a proven fact: helmets significantly reduce the number and severity of head injuries. So always wear an approved motorcycle helmet." The subject ATV itself had a warning sticker affixed to its bodywork that listed as one of its first warnings (complete with a graphic illustration) for users to "ALWAYS USE AN APPROVED HELMET AND PROTECTIVE GEAR" and noting that "[i]mproper ATV use can result in SEVERE INJURY or DEATH." This warning label also admonished users of the ATV to "LOCATE AND READ OWNER'S MANUAL. FOLLOW ALL INSTRUCTIONS AND WARNINGS." As noted, the instructions and warnings contained in the ATV's owner's manual included an instruction to always wear a helmet when operating the vehicle. A United States Department of Labor Occupational Safety and Health Administration "Agricultural Safety Fact Sheet" used by the Division at the hearing cataloged accidents involving ATV's in agricultural settings. From 2003 to 2011, there were 2,090 injuries and 321 fatalities involving ATV's. According to the Agricultural Safety Fact Sheet, three out of every five overall reported ATV fatalities during that time period occurred in agricultural settings. That same Agricultural Safety Fact Sheet also specifically identified "[o]perators not wearing a helmet or other protective equipment" as one of the six cited causes of a majority of the reported ATV incidents. A Pennsylvania State University Extension paper ("The Safe Use of ATVs in Agriculture") likewise utilized by the Division before the Board in this matter concluded expressly that given the hazards inherent in operating an ATV in an agricultural setting, "[a] full-face helmet that is the correct size for the operator should always be worn when riding an ATV," notwithstanding that at low speeds such a helmet might become "unbearably hot."

22.

A 2016 Extension Foundation publication also utilized by the Division before the Board in this matter ("ATV Safety for Agricultural Producers") highlighted the number of injurious and fatal ATV accidents on farms and ranches, and stated that "[t]he most important piece of PPE for an [ATV] operator is a helmet."

Given the amount of information and warnings available to both Lion and the Division concerning the risks of serious head injury or death when riding ATV's, and the importance of wearing a helmet when doing so to prevent such injury or death, there is more than substantial evidence to support the Division's conclusion that Lion's failure to mandate the wearing of safety helmets by its employees when riding ATV's in the course and scope of their work in the vineyard was a "serious" violation of section 3380(f)(1)(A). Lion's position that its employees would be safer riding ATV's without helmets than with helmets defied logic and reason.

While Lion makes considerable argument regarding a lack of causal connection between Barrientos's fatal accident and his not wearing a helmet at the time of the accident, that was immaterial to the analysis. It was the potential of serious injury or death inherent in riding ATV's in agricultural settings, evinced by the numerous safety publications and warnings considered by the Division, as well as the opinion of the Division's own subject matter expert, that was material to determining whether the lack of a helmet mandate constituted a "serious" violation of section 3380(f)(1)(A). The fact that Barrientos's tragic death was not related to a lack of a helmet did not diminish the likelihood that other Lion employees could be severely injured or killed while using ATV's without helmets because the wearing of helmets while riding them was not required by Lion as part of its PPE program.

The administrative record also contains extensive documentation of the Division's analysis and calculation of the $18,000 amount of the penalty in question, which amount was ultimately reduced to $13,500 by the Board. This penalty was supported by the workplace safety regulatory scheme in which the amount of a "serious" violation's

23.

penalty is determined.[5] In this case, section 335, subdivision (a)(1)(B) required the severity of the "serious" violation to be regarded as "high," and section 336, subdivision (c)(1) in turn dictated an initial default base penalty of $18,000. Lion and the Division stipulated to a 15 percent good faith reduction to this default penalty, as well as a 10 percent reduction for Lion's history of a lack of such violations, which resulted in an adjusted proposed penalty of $13,500. The evinced analysis and calculations reveal that the ultimate amount of the penalty was not arbitrary or excessive, but instead was based upon specific enumerated factors that were considered and weighed in light of the facts and circumstances of this particular violation, as well as upon the stipulated agreement of the parties. Any trier of fact objectively assessing the evidence supporting the decisions of the Division and Board in developing the penalty for the Serious Citation would find the evidence "reasonable, credible and of solid value." (*Sandarg*, *supra*, 184 Cal.App.4th, at p. 1440.) Additionally, our "look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment [was] supported by substantial evidence" reveals that it was also reasonable and supported by substantial evidence. (*Ibid.*) Accordingly, we find that substantial evidence supported not only the Division's assessment of Lion's violation of section 3380 as "serious," but

---

[5] According to the scheme, first, a violation of the Division's workplace safety regulations is categorized as either "general" or "serious" under section 334.

Next, the gravity of the violation is assessed by the qualitative factors set out in section 335, subdivision (a), under which the violation is rated as "low," "medium," or "high," in the categories of severity ("serious" violations are high severity by definition); extent; and likelihood of the injury, illness, or disease.

Finally, the amount of the civil penalty imposed for the violation is calculated under the quantitative rubric of section 336. Both "general" and "serious" violations are incorporated into the rubric, and for each violation, the "low," "medium," and "high" ratings determined under section 335 determine the base penalty or are used as adjustment factors (either increasing or decreasing the amount of the penalty, depending upon whether each of the factors are regarded as "low," "medium," or "high"). Both specific dollar amounts and percentages of adjustment are stated in the rubric.

the Board's imposition of the $13,500 penalty for such a "serious" violation under the particularized facts and circumstances of this case, as well as the trial court's ratification of that penalty.

## IV. The Independent Employee Action Defense (IEAD) Does Not Apply to the Citations

Lastly, we consider whether the Board and the trial court erred in holding that the IEAD was not applicable to the citations Lion received. In its motion for administrative mandate, Lion sought to rely on the IEAD as an affirmative defense to the citations the Division assessed it in this instance. Lion's efforts in this regard were based on its assertion that Barrientos's accident was caused by Barrientos's own unsanctioned excessive speed when using Lion's ATV, and was not due to any deficiencies in Lion's safety standards. The IEAD, however, applies to employee actions and decisions, not employer actions and decisions. In this case, the citations at issue were not related to Barrientos's actions or death, but rather Lion's actions (and inactions). The IEAD therefore has no applicability to this case, and neither the Board nor the trial court erred in so finding.

For an employer like Lion to successfully assert the IEAD, it must prove all five of the IEAD's constituent elements: (1) the employee in question was experienced in the job being performed; (2) the employer has a well-devised safety program that includes training employees in matters of safety respective to particular job assignments; (3) the employer effectively enforces the safety program; (4) the employer has a policy of sanctions which it enforces against those employees who violate its safety program; and (5) the employee caused a safety infraction which the employee knew was contrary to the employer's safety requirements. (*Mercury Service, Inc.*, Cal/OSHA App. 77-1133, pp. 2–3, Decision After Reconsideration (Oct. 16, 1980).)

As the ALJ correctly noted in this case, Lion itself, and not its employee Barrientos, was the actor responsible for the violations of both of the cited safety

25.

regulations. The IEAD is premised on an employer's compliance with its nondelegable statutory and regulatory duties. (*Pierce Enterprises*, Cal/OSHA App. 00-1951, pp. 11–12, Decision After Reconsideration (Mar. 20, 2002).) In this case, there was substantial evidence adduced that Lion was not in compliance with its nondelegable regulatory duties (and an outright admission by Lion of its noncompliance with its duties under section 3380(f)(2)). Lion could not abrogate such duties by claiming that Barrientos violated Lion's safety program (even if Barrientos's conduct leading to his fatal accident did in fact violate Lion's safety program). Such a violation on the part of Barrientos did not relieve Lion of its independent obligation to perform its nondelegable regulatory duties. Lion's attempt to invoke the protections of the IEAD on the facts of this case was therefore unavailing, and the Board and trial court's decisions in that regard were supported by substantial evidence.

## V. Conclusion

There was no error in the trial court's denial of Lion's petition for an administrative writ of mandate. Lion's due process claim should and could have been raised at the Board and trial court levels, but was not. Even if it had been, it is unmeritorious, as the pertinent regulation, as applied, did not violate Lion's constitutional substantive due process rights. Neither the Board nor the trial court erred in holding that the PPE workplace safety regulatory violation was "serious," given the widely recognized potential for grievous bodily injury and death inherent in operating ATV's in an agricultural setting without mandating operators wear safety helmets. The amounts of the penalties assessed against Lion for its violations of sections 3380(f)(2) and 3380(f)(1)(A) were supported by substantial evidence, given the gravity of the violations of those regulations committed by Lion. Neither the Board nor the trial court erred in holding the IEAD inapplicable to the facts and circumstances of this case, because that defense applies when the behavior of an employee is at issue, and in this instance, it was the behavior of the employer that was at issue.

26.

For these reasons, the trial court's ruling on Lion's petition for writ of administrative mandate was correct, and should not be disturbed on appeal.

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.


LEVY, Acting P.J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.