Filed 2/22/22  Hernandez v. Registrar of Contractors CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FELIPE REYEZ HERNANDEZ, et al., | F080524 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 18CECG03786) |
| REGISTRAR OF CONTRACTORS, et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

The Law Office of Jim A. Trevino and Jim A. Trevino for Plaintiffs and Appellants.

Xavier Becerra and Rob Bonta, Attorneys General, Carl W. Sonne, Assistant Attorney General, David E. Brice, Andrew M. Steinheimer and Patricia Webber Heim, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Felipe Hernandez appeals from the trial court's denial of his petition for writ of administrative mandate.  Hernandez sought a writ of administrative mandate following the revocation of his state contractor's license by respondent, the Registrar of

Contractors, California Contractors State License Board (the Board).[1] That revocation was the end result of a hearing held before an administrative law judge, following complaints made to the Board against Hernandez by his former customers arising from a particular construction project.

Hernandez contends the trial court's order in this case did not state sufficient grounds to determine if the trial court applied the proper standard of review. Finding that Hernandez waived his objections to the trial court's orders, that a presumption of correctness is given to such orders, and that substantial evidence supported the trial court's order denying Hernandez's petition, we affirm.

Hernandez argued in his petition for writ of administrative mandate that (1) the trial court denied him a fair hearing because no Spanish interpreter participated in the administrative hearing; (2) the amount of restitution was unsupported by competent evidence; and (3) newly discovered evidence would show the true costs of remediation. Hernandez does not advance these arguments expressly on appeal; nevertheless, we conclude that these arguments are unpersuasive.

## FACTS

Hernandez owned and did business as Visalia Hernandez Construction. Hernandez had a Class "B" General Building Contractor license, issued to him by the Board in October 2008.

In September 2014, Hernandez entered into a contract with Oscar Aquino, Jr. and his father Oscar Aquino, Sr. (the Aquinos) to remodel a commercial building located in Fresno (the Project). The contract called for dividing the building into three units, and

---

[1] The Registrar of Contractors is the executive officer of the California Contractors State License Board, which is itself part of the California Department of Consumer Affairs, which in turn is a department of the cabinet-level California Business, Consumer Services and Housing Agency. That entity will be referred to herein collectively as "Board."

performing all related work, including replacing doors and windows, plumbing, painting, as well as electrical work. The original contract price for the Project was $32,740. Starting in September 2014, Hernandez and the Aquinos entered into several change orders which increased the cost of the Project by $25,028.

While Hernandez did undertake some of the contracted work, he never completed the Project, despite the Aquinos ultimately having paid him $68,271.18, for both the change orders and other payments not included in the initial contract. According to the Aquinos, Hernandez represented to them that the change orders were needed because City of Fresno inspections had mandated them, but no such City of Fresno inspections ever took place. The Project was eventually completed by another contractor hired by the Aquinos.

In April 2015, the Aquinos filed a complaint with the Board against Hernandez for abandoning the Project. In June 2016, the Board issued a Licensee Investigation Report regarding the Aquinos' allegations about Hernandez.

In August 2017, the Board filed a five-count accusation against Hernandez. The Board accused Hernandez of abandoning the project before it was complete without any legal excuse (Bus. & Prof. Code,[2] § 7107); willfully departing from accepted trade standards for good and workmanlike construction, specifically in failing to properly install exterior doors on the Project (§ 7109, subd. (a)); failing to complete the construction work on the Project for the stated contract price, including the change orders (§ 7113); failing to include statutorily required language (that the Board had jurisdiction to investigate complaints) in the written contract Hernandez prepared and entered into with the Aquinos for the Project (§ 7115); and making fraudulent statements and

_____

[2] All statutory references are to the Business and Professions Code unless otherwise stated.

3.

inducing the Aquinos to enter into change orders based on alleged inspections by the City of Fresno that never actually took place (§ 7116).

The Board's accusation noted that Hernandez's contractor's license had been suspended by the Board on six prior occasions, over a six-year span, for various violations of the Business and Professions Code as well as the Code of Civil Procedure. The accusation also noted specifically as a matter in aggravation that Hernandez had received three citations for violations of the Business and Professions Code over the prior six years, specifically for failures to obtain building permits, contract violations, departure from trade standards, and obtaining false completion certificates.

The Board sought a revocation or suspension of Hernandez's contractor's license; a prohibition on Hernandez serving as an officer, director, associate, partner, or qualifying individual of any licensee during the period of any discipline imposed; a revocation or suspension of any other license for which Hernandez is furnishing the qualifying experience or appearance; restitution of all damages according to proof; payment to the Board by Hernandez of all costs of investigation and enforcement incurred by the Board in the case against him; and provision to the Board of a list of all contracting projects in progress and the anticipated completion date for each.

On June 12, 2018 and on July 3, 2018, a hearing was held before an administrative law judge (ALJ). Hernandez appeared at both hearings and represented himself. In July 2018, the ALJ issued his proposed decision in favor of the Board, setting forth various findings of fact and conclusions of law.

In August 2018, the Board adopted the ALJ's proposed decision in its entirety as its decision and order, effective September 14, 2018. In doing so, the Board revoked Hernandez's contractor's license on the grounds that Hernandez had abandoned the Project without legal cause, had willfully departed from accepted trade standards for good and workmanlike construction, had failed to complete the Project for the agreed contract price, had failed to include a mandatory notice in the written contract, and had

4.

engaged in willful or fraudulent acts during the construction project. The Board ordered Hernandez to pay restitution to the Aquinos in the amount of $122,809.62, and investigation and enforcement costs to the Board in the amount of $9,765.

In September 2018, Hernandez filed a petition for reconsideration, which the Board denied.

## JUDICIAL PROCEEDINGS

In October 2018, Hernandez filed a petition for writ of administrative mandate. The substance of that petition was Hernandez's claim that the Board's decision and order were invalid because (1) the ALJ deprived Hernandez of his due process rights and to a fair hearing because Hernandez did not have a Spanish interpreter for the hearing; (2) the ALJ's finding that the cost to complete the Project was $119,806.04 was not supported by the evidence; and (3) there were new or different facts in Hernandez's favor which, despite the use of reasonable diligence, could not have been produced at the hearing on the accusation, and which would support a finding that the costs of completion of the Project were substantially less than what the Board found.

In particular, Hernandez complained that the report of inspection and estimate of completion costs prepared by the Board's retained expert, John R. Scott, was admitted into evidence by the ALJ without proper foundation and authentication. Hernandez claimed that the method Scott used to calculate the cost of completion of the Project was not consistent with industry standards, and there was no evidence to establish what factors or information were used by the cost estimation software program Scott utilized. Hernandez also claimed that he possessed evidence, including pictures of the Project after its completion, and permits issued to the Aquinos for the corrected work, which evidence would establish the actual costs of completion of the Project.

In April 2019, Hernandez filed a motion for an order authorizing issuance of a peremptory writ of mandate and a request for stay of decision, pursuant to Code of Civil Procedure section 1088.5, along with a supporting memorandum of points and

authorities.  In May 2019, the Board filed an answer to the writ petition and an opposition to Hernandez's motion.

In May 2019, the trial court held a hearing on Hernandez's motion for an order authorizing issuance of a peremptory writ of mandate and request for stay of decision. The court denied the motion and the request for stay because the administrative record that Hernandez attempted to submit electronically in February 2019 had been rejected due to improper formatting.  The court gave Hernandez the opportunity to correct this defect.

In September 2019, after lodging the administrative record, Hernandez filed another motion for an order authorizing issuance of a peremptory writ of mandate and request for stay of decision.  In October 2019, the Board filed its opposition to the motion.

On October 18, 2019, the trial court held a hearing on the merits of the writ petition and stay request.  No court reporter attended the hearing and it was not otherwise recorded.  Following the hearing, the court issued a minute order stating Hernandez "did not meet [his] burden," the petition for writ of mandate was dismissed, and directing the Board to "file proper Order and circulate for review and signature."  The appellate record does not show Hernandez requested a statement of decision.  A signed, final order was not filed before December 18, 2019, when Hernandez filed a notice of appeal from the October 18, 2019, minute order.

On April 29, 2020, this court issued an order indicating it was considering dismissing Hernandez's appeal as premature because of the lack of a final order.  That order directed Hernandez to file either notice of a signed order entering judgment in the case or an informal letter brief setting forth why the appeal should not be dismissed without prejudice as premature.  On July 6, 2020, Hernandez filed with this court a declaration and a May 26, 2020, trial court "Order Dismissing Petition for Writ of Mandate" that had been prepared by Hernandez's counsel and signed without

6.

modification by the trial court. On July 10, 2020, this court issued an order acknowledging the May 26, 2020, trial court order and construing Hernandez's December 2019 notice of appeal as having been taken from an appealable order, pursuant to California Rules of Court, rule 8.104(d).

## DISCUSSION

I.     BASIC LEGAL PRINCIPLES

     A.     <u>Administrative Mandate</u>

Administrative mandate proceedings are governed by Code of Civil Procedure section 1094.5. A petitioner files a petition for a writ of administrative mandate to obtain a writ directing the administrative agency in question to set aside its decision, to reconsider its decision, or to take other action as the court directs. (Code Civ. Proc., § 1094.5, subd. (f).)

     B.     <u>Standard of Review</u>

Code of Civil Procedure section 1094.5 also governs judicial review of adjudicatory decisions by administrative agencies, such as the Board in this case. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.) "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., 1094.5, subd. (c).)

7.

"The scope of review of supporting evidence for abuse of discretion depends on whether the decision substantially affects a fundamental vested right." (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418.). "Where the public agency's decision affects a fundamental vested right, the trial court exercises independent judgment in assessing whether the evidence is sufficient to support the agency's findings." (*Ibid.*) "In such cases, the court conducts a limited trial de novo and 'abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence.'" (*Ibid.*) On appeal, whichever standard was used below, the standard of review of the trial court's factual determinations is whether they are supported by substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 (*Fukuda*); *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525.)

An administrative agency's interpretation of its own regulations is entitled to "great weight"; " ' "[w]e must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable." ' " (*Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 244; accord, *Rick's Electric, Inc. v. Occupational Safety and Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1033.) " ' " 'Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value.' [Citation.] Additionally, a reviewing court 'may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence.' " ' " (*Sandarg v. Dental Board of California* (2010) 184 Cal.App.4th 1434, 1440.)

As the appellant, Hernandez bears the burden on appeal to demonstrate "that the trial court committed an error …." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) " '[R]arely, if ever, will a board determination be disturbed unless the petitioner is able to show a jurisdictional excess, a serious error of law, or an abuse of discretion on the

8.

facts.'" (*Fukuda, supra,* 20 Cal.4th at p. 814, quoting *Sipper v. Urban* (1943) 22 Cal.2d 138, 144 (conc. opn. of Schauer, J.).)

## II.     MERITS OF THE APPEAL

### A.     Contentions of the Parties

Hernandez contends that neither the trial court's minute order nor its final order denying Hernandez's petition states sufficient grounds to support that court's finding that Hernandez failed to meet his burden of proof. Specifically, Hernandez claims that it is impossible to determine from the trial court's orders whether or not the trial court applied the independent judgment standard of review in considering the Board's decision. The Board contends the trial court is presumed to have employed the correct standard of review because the record is silent as to the standard applied. The Board also contends Hernandez waived any objections by failing to raise them in the trial court, by not requesting a statement of decision, and by drafting the final order signed by the trial court.

Hernandez's petition for writ of administrative mandate attacked the Board's decision as being in excess of its authority (and depriving Hernandez of a fair hearing) due to a lack of a Spanish interpreter, as well as for lacking sufficient evidence to support the Board's findings about the costs of completion of the Project. Hernandez, however, does not advance these substantive arguments directly on appeal. Instead, his focus on appeal is limited to his complaint that the trial court's orders on his petition for writ of administrative mandate "did not contain any grounds to support the superior court's finding that [Hernandez] failed to meet his burden." The Board's appellate brief addresses this claim of procedural error and, in the exercise of caution, also asserts that the trial court's orders are supported by substantial evidence.

B. Challenges to the Sufficiency of the Trial Court's Orders

*1.  Hernandez's objections to the trial court's final order are unavailing*

Hernandez's objections to the trial court's final order center around his contention that the order "did not contain any grounds to support the superior court's finding that Appellant failed to meet his burden.  From this record it is not possible to determine if the superior court applied the proper independent judgment standard of review …."  Hernandez is correct that the trial court was required to apply the independent judgment standard of review.  Hernandez is incorrect, however, regarding the inferences drawn when a judicial order is silent as to the standard of review utilized in reaching the decision.  Hernandez contends such orders must be vacated. The law is in fact to the contrary, as trial courts are presumed to have utilized the proper standard of review.

*2.  We presume the trial court applied the proper standard of review*

"The courts must decide on a case-by-case basis whether an administrative decision or class of decisions affects fundamental vested rights and thus requires independent judgment review." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144.)  "A right may be deemed fundamental ' "on either or both of two bases: (1) the character and quality of its economic aspect; [or] (2) the character and quality of its human aspect." [Citation.]  "The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power.  [Citation.]" [Citation.]  "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." ' " (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 926—927 (*Saraswati*).)  "Further, a fundamental right is *vested* if it is 'already possessed by the individual,' such as in an employment context when 'the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession.' " (*Id.* at p. 927.)  "Fundamental vested rights are often found in the context of public employment rights,

licensing decisions, public assistance benefits and land use. (See, e.g., *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652 [termination of police officer's employment]; *Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320-321 [revocation of vehicle salesperson license]; *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [the right to retain a driver's license] …." (*Ibid.*)

Applying the principles expressed in *Saraswati*, *supra*, 202 Cal.App.4th 917, because the Board's administrative decision revoked Hernandez's contractor's license, by which Hernandez had for years earned his living as a building contractor, it substantially affected a fundamental vested right of Hernandez. The trial court should therefore not only have examined the administrative record for errors of law, it should also have applied the independent judgment standard of review to the evidence on the petition for writ of administrative mandate, and assessed whether the evidence was sufficient to support the agency's findings. (Code Civ. Proc., § 1094.5, subd. (c); *Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 814, fn. 6.) That is precisely what the law presumes the trial court did in this instance.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Further, "[i]t is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032 (*Mack*).) The trial court is thus presumed to have known and applied the proper standard of review in this instance: independent judgment.

Hernandez's reliance on *Harlow v. Carleson* (1976) 16 Cal.3d 731 (*Harlow*) is therefore misplaced. Hernandez cites *Harlow* for the proposition that when a superior court finding on a petition for writ of administrative mandate is silent regarding what

11.

standard of review was applied, it is not possible to determine if the superior court applied the proper standard of review. That is not *Harlow*'s holding, however.

Harlow involved the Department of Social Welfare's decision to terminate disability welfare benefits to a recipient. While the benefits were reinstated six months later, the recipient brought a claim against the agency to obtain payment of the benefits for the period of suspension. (*Harlow*, *supra*, 16 Cal.3d at p. 734.) When the agency denied this claim, the recipient filed an administrative mandate action in superior court. (*Ibid.*) That trial court expressly rejected the independent judgment standard of review, applied the substantial evidence test instead, and found that the challenged administrative decision was not supported by any substantial evidence. (*Ibid.*) On appeal, our Supreme Court held that the recipient's interest in continued receipt of disability benefits previously awarded was a "fundamental vested right" requiring utilization of the independent judgment standard of review by the trial court. (*Id.* at p. 735.) *Harlow* concluded that "it is clear from the record that had the court properly applied the independent judgment test, it would have reached the same result, for this latter test is more favorable to respondent than that utilized by the trial court in ruling in her favor." (*Id* at p. 738.) The *Harlow* court therefore treated the appeal "as if the trial court had exercised its independent judgment" and affirmed the trial court, notwithstanding the fact that the lower court had utilized the incorrect standard of review. (*Id.* at p. 739.)

Unlike this case, *Harlow* did not involve an order that was silent as to the standard of review employed by the trial court in reaching its decision. Instead, the order expressly utilized the wrong standard of review. (*Id*. at p. 734.) *Harlow* says nothing about what presumptions are to be made when a trial court's ruling on a petition for an administrative writ does not specify the standard of review the court used. *Harlow* certainly does not state that in such a circumstance of silence, no conclusion is to be drawn or presumption made. Instead, the presumptions of *Arceneaux, supra,* 51 Cal.3d 1130, and *Mack*, *supra*, 178 Cal.App.3d 1026, are to be made in favor of the judgment.

12.

### 3. *Hernandez waived his objections to the trial court's order*

Code of Civil Procedure sections 632 and 634, "set forth the means by which to avoid the implication of these inferences in favor of the judgment." (*Arceneaux*, *supra*, 51 Cal.3d at p. 1133.)  Code of Civil Procedure section 632 states in part:

> "In superior courts, upon the *trial of a question of fact* by the court, written findings of fact and conclusions of law shall not be required.  The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial *upon the request of any party* appearing at the trial." (Italics added.)

A hearing on a petition for writ of administrative mandamus is a "trial of a question of fact" for purposes of Code of Civil Procedure section 632. (*Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1326, fn. 3.)  Therefore, upon the request of a party to the writ proceeding, the trial court is required to issue a statement of decision.  When, as in this instance, the trial is completed within one day, "the request must be made prior to the submission of the matter for decision." (Code Civ. Proc., § 632; see Cal. Rules of Court, rule 3.1590(n) [trial within one day].)  Hernandez has cited nothing in the appellate record showing he requested a statement of decision from the trial court, and our independent review of the record did not locate such a request.  In the absence of a request, the trial court was not obligated to issue a written statement of decision.

Hernandez's failure to request a statement of decision operates as a waiver of any objections to ambiguities or omissions in the trial court's order. (Code Civ. Proc., § 634; *Arceneaux*, *supra*, 51 Cal.3d at pp. 1133—1134.)  Code of Civil Procedure section 634, provides that "[w]hen a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal … that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.)  "The clear implication of this provision, of course, is

13.

that if a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*Arceneaux*, *supra*, 51 Cal.3d at pp. 1133—1134.)

Hernandez raised none of the deficiencies he now claims plague the trial court's orders "prior to the submission of the matter for decision" (Code Civ. Proc., § 632) or even before the final order was filed. Therefore, we conclude Hernandez waived any deficiencies in those orders.

### 4.     *Hernandez cannot claim the order he drafted was deficient*

An alternate ground for concluding Hernandez waived his objections is that his attorney drafted the final order challenged in this appeal. In response to this court's order of April 29, 2020, on July 6, 2020, Hernandez's counsel filed with this court a declaration and a May 26, 2020, final order of the trial court dismissing Hernandez's writ petition, which order was drafted by Hernandez's counsel and signed without modification by the trial court. It is this final order that Hernandez now complains "did not contain any grounds to support the superior court's finding that Appellant failed to meet his burden." The final order states in pertinent part:

> "The Court having considered all the pleadings filed in support and in opposition of the Writ of Mandate, upon satisfactory evidence having been presented, and good cause presented, the Court finds: [¶] 1. Petitioner, FELIPE REYEZ HERNANDEZ dba VISALIA HERNANDEZ CONSTRUCTION has failed to meet his burden of proof supporting an issuance of a Writ of Mandate. [¶] Based upon the Court's finding stated above and good cause appearing, [¶] IT IS HEREBY ORDERED the Writ of Mandate, filed by [Hernandez] is dismissed."

It is a maxim of jurisprudence that "[n]o one can take advantage of his own wrong" (Civ. Code, § 3517; *Wilkins v. City of San Bernardino* (1946) 29 Cal.2d 332, 342.) Whatever infirmities Hernandez now claims exist in the May 26, 2020, final order, they are of Hernandez's own making, and he did not previously find fault in the order or

take any prior steps to revise it. He cannot now be heard for the first time on appeal to complain of words that were written on his own behalf.

C.     <u>Challenges to the Board's Decision</u>

We must affirm the trial court's ruling if there is any basis in the record for doing so. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 966.) " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) A review of the administrative record shows (1) substantial evidence supports the trial court's factual finding underlying its implied determination that Hernandez was afforded a fair administrative hearing and (2) substantial evidence supports the findings as to the estimated costs to complete the Project. Thus, the trial court's denial of the writ petition can be affirmed on its merits—that is, the trial court correctly decided Hernandez failed to prove the Board erred in revoking his license.

### 1. *Hernandez was afforded a fair hearing*

A review of the administrative record shows that Hernandez was afforded a fair hearing on the merits, notwithstanding his self-represented status and the lack of a Spanish interpreter.

During the June 12, 2018, hearing, the ALJ repeatedly asked Hernandez if there was any reason the hearing could not proceed while Hernandez was unrepresented by counsel. Hernandez repeatedly indicated that he was willing to proceed without counsel. Hernandez was apprised by the ALJ of hearing mechanics such as calling witnesses and

15.

objecting to testimony. Hernandez was afforded a second hearing day by the ALJ to "ensure" that Hernandez got "a fair hearing."

With respect to the lack of a Spanish interpreter that Hernandez now complains of, it is worth noting that the Board was not required to provide Hernandez with an interpreter at the administrative hearing. (Gov. Code, § 11435.15.) Moreover, as we will see below, Hernandez was repeatedly informed by the ALJ of the potential availability of an interpreter, yet Hernandez consistently declined to use one, and repeatedly assured the ALJ that he did not require an interpreter for his own benefit. By so declining, Hernandez waived this claim. (*Jaramillo v. State Bd. for Geologists & Geophysicists* (2006) 136 Cal.App.4th 880, 893 [principles of waiver apply to administrative proceedings].)

The April 4, 2018, notice of continued hearing that was sent on behalf of the Board to Hernandez apprised him in writing that the hearing was going to be conducted in English, and that if a party or a party's witness did not proficiently speak or understand English, an interpreter could be provided. There is no evidence in the record that Hernandez gave advance notice to the Board or the ALJ that he required an interpreter at the hearing.

At the June 12, 2018, administrative hearing, the ALJ informed Hernandez of the availability of certified interpreters for use by witnesses Hernandez intended to call, as well as for Hernandez himself. Hernandez indicated on June 12, 2018, that one witness he contemplated calling at the next hearing date would need the services of an interpreter. Hernandez's last colloquy on the subject with the ALJ at that time, in fact, concluded with an understanding that an interpreter would be utilized at the second hearing. Hernandez therefore was well aware of the availability of certified interpreters for any hearing participants who needed them, including himself. Hernandez nevertheless chose to proceed at both hearings without an interpreter, either for any witness or for himself.

Hernandez did, however, utilize his son, Michael Hernandez, as an unofficial interpreter for his own benefit at the July 3, 2018, administrative hearing. On at least one occasion during that administrative hearing, Hernandez's son Michael did assist his father in clarifying testimony.

The ALJ repeatedly asked Hernandez at the June 12, 2018, hearing if he comprehended what was taking place at the hearing, and Hernandez repeatedly answered in the affirmative. The ALJ also repeatedly explained to Hernandez the substance of what was transpiring at the hearing, and obtained repeated assurances from Hernandez that he comprehended the proceedings. At the July 3, 2018, administrative hearing, the ALJ again sought and obtained assurances from Hernandez that Hernandez understood the proceedings.

There were occasions on the record when Hernandez expressed some degree of confusion about the administrative proceedings. For example, when the ALJ asked Hernandez at the July 3, 2018, hearing whether he had any questions about the proceedings of the June 12, 2018, hearing, Hernandez responded:

> "No questions, Your Honor. Well, little question. When I started the amount – before I talking – I understand English. I speak English, pero sometimes in the middle this, sometimes I don't understand little word, but when I got in the first meeting with you, I got two questions, really basically three: One, the papers you show me the amount or whatever in case I lose my court, I need pay money for these cases or whatever.

> "Second, the evidence when I confirmation, especial when the retired general contractor do the estimate, I am confused in this area, whatever he is working and seeing over there showing the papers, so in here I am confused too."

The ALJ at that point, however, conversed at some length with Hernandez, and went over each of the questions Hernandez had about the prior administrative hearing, to ensure Hernandez's understanding. The ALJ also assured Hernandez that if he did not understand a question, the ALJ would ask counsel for the Board to rephrase it. The ALJ

further explained to Hernandez the meaning of objections made by counsel for the Board to Hernandez's sworn testimony, to ensure that Hernandez understood the meaning and consequences of such objections. The ALJ additionally explained to Hernandez what the purpose and scope of a closing argument was, before affording Hernandez an opportunity to give his own closing argument at the close of the administrative hearing. In response, Hernandez indicated to the ALJ that he understood the ALJ's instructions.

The ALJ later revisited the level of Hernandez's comprehension of the proceedings when Hernandez asked if his son Michael could provide any interpretive services. The ALJ explicitly noted that Hernandez previously indicated he did not need an interpreter. The ALJ then asked Hernandez whether Hernandez had understood everything the ALJ and the previous witnesses had said, and Hernandez responded affirmatively. Later, the ALJ again asked Hernandez if he understood what the ALJ was saying, to which Hernandez responded positively. At no point during the recorded proceedings did Hernandez's son Michael indicate to the ALJ that Hernandez, despite his assurances to the ALJ, in fact did not understand the proceedings. Other than asking if his son Michael could provide interpretive services at the July 3, 2018, hearing, Hernandez did not request an interpreter on either day of the hearing, and never otherwise indicated that he needed an interpreter.

In addition, the ALJ took great pains to make sure he was comprehending Hernandez's testimony when Hernandez took the stand in his own defense at the July 3, 2018, hearing. At times, the ALJ asked Hernandez questions while Hernandez was testifying under oath, in effect conducting a direct examination of Hernandez, and thereby assisting in the effectiveness of the presentation of Hernandez's case. The ALJ also repeatedly admonished Hernandez to slow down while Hernandez was testifying, to ensure that an accurate transcription of the testimony could be made.

During closing argument, Hernandez did state that: "For final, I'm sorry, again, for my English, Your Honor. Sometimes I don't understand, but I try doing the best. My

18.

first time when I got the first meeting with you surprise me, because I don't know exactly what is going on, and by this point I still confused, and I try the best I can do in my evidence." There is no indication in the record before us, however, that Hernandez lacked a fundamental understanding of the significance of the overall administrative proceedings, or that he was unable to meaningfully present his own defense during those proceedings. In addition to taking the stand in his own defense, Hernandez introduced numerous documents into evidence, and took advantage of his opportunities to cross-examine every one of the Board's witnesses.

Hernandez's own behavior and responses at the time of the administrative hearings support the conclusion that he did not need and did not ask for a Spanish interpreter for his own benefit at either of those hearings. Further, the consistent and significant efforts of the ALJ to ensure both Hernandez's comprehension of the administrative hearing and the ALJ's comprehension of Hernandez at the administrative hearing provide an ample basis to conclude that Hernandez was afforded a fair hearing.

### 2. *Substantial evidence supports the Board's estimate of the Project completion costs*

Hernandez also complains that there was insufficient evidence in the record before the Board to support its contention that it would cost $119,806.44 to effect all of the repairs and additional work needed to bring the Project to completion following Hernandez's cessation of efforts. A review of the evidence before the ALJ on this subject, however, indicates there was substantial evidence to support that finding. Moreover, Hernandez did not offer any competent evidence to the contrary at either the administrative hearing or the trial court hearing.

At the June 2018 administrative hearing, the Board introduced the testimonial evidence of its retained construction contracting expert, Mr. John Scott. Mr. Scott testified at length under oath regarding his inspection of the Project site and the basis of

19.

his estimate of the costs for completing the Project. Moreover, Mr. Scott was subject to cross-examination by Hernandez, which Hernandez in fact conducted.

Mr. Scott's 76-page report of inspection and cost estimate was also discussed during his sworn testimony in line-item detail, and was subject to inquiry by Hernandez. During that time Mr. Scott testified about the computerized construction cost estimating program that he utilized to develop his cost estimate of the completion of the Project. Hernandez cross-examined Mr. Scott regarding the report, but Hernandez did not object to Scott's use of the particular computerized cost estimate program he relied on, or otherwise question its efficacy. Without objection by Hernandez, Mr. Scott's expert report (including his estimate of the costs of completion of the Project) was also accepted into evidence by the ALJ and considered on the question of restitution. Moreover, Mr. Scott's $164,951.24 estimated Project completion cost was reduced to back out the re-flooring costs that were not a part of the original contract between Hernandez and the Aquinos (though the floor of the Project did need refinishing).

Additionally, Oscar Aquino, Jr. testified at the administrative hearing regarding the aftermath of Hernandez's departure from the Project. Aquino was cross-examined by Hernandez, though just before doing so Hernandez stated on the record that "[e]verything that Mr. Aquino said so far is true." Aquino prepared a declaration in lieu of written contract that explained in detail the work the Aquinos had contracted with Hernandez to perform, which declaration was admitted into evidence without objection by Hernandez. A proposal by a new contractor to finish the interior portion of the Project was also admitted into evidence without any objection from Hernandez. All of this evidence served to bolster Mr. Scott's cost estimate.

At the July 2018 administrative hearing, the ALJ asked Hernandez what documentary evidence Hernandez intended to introduce. Hernandez indicated that he had documents he intended to offer into evidence in addition to those documents he had previously provided counsel for the Board. The ALJ then reminded Hernandez of his

20.

obligation to provide opposing counsel with all such documents, and excluded all documents not previously provided to counsel for the Board, for that same reason. The ALJ even asked Hernandez why Hernandez had not provided the additional documents to opposing counsel sooner than the second day of the administrative hearing, but did not receive a satisfactory or convincing response from Hernandez.

The ALJ ultimately asked counsel for the Board if he had any objections to the documents that Hernandez had provided via email prior to the second administrative hearing (but seven days after the deadline the ALJ had given Hernandez to provide such documents to the Board's counsel). In response, counsel for the Board stated that he did not object to the emailed documents on the basis of untimeliness, but did have objections to some of them based on a lack of relevance to the subject matter of the administrative hearing. Based upon that response, the ALJ allowed Hernandez to offer into evidence all documents he had sent via email to counsel for the Board, notwithstanding that they had been sent seven days after the June 22, 2018, production deadline the ALJ had originally imposed. The ALJ only excluded those documents sent by Hernandez via mail which apparently had not reached counsel for the Board at all.

At no time, however, did Hernandez even seek to introduce any documentary evidence to contradict Mr. Scott's completion cost estimate for the Project. Despite having several weeks between hearing dates during which he might have gotten a second opinion about completion costs from an expert of his own, or simply by utilizing his own computerized program, Hernandez apparently did neither, and Mr. Scott's estimate therefore was uncontradicted by any evidence adduced by Hernandez at either hearing date. Moreover, when afforded the opportunity to object to the introduction of Mr. Scott's report into evidence, Hernandez declined to do so. That detailed 76-page report and estimate, along with Mr. Scott's sworn and cross-examined testimony regarding his methodology in developing the estimate, constituted substantial evidence to

21.

support the trial court's finding that the Board's Project completion cost estimate was well-founded.

### 3. *Denial of an opportunity to present new evidence was proper.*

Hernandez's argument, advanced in his administrative writ petition, that "new or different" evidence exists which despite the use of reasonable diligence could not have previously been obtained or offered for judicial consideration, is unpersuasive. Hernandez has never proffered any actual documentation in this regard to any tribunal, at any time.

The second administrative hearing in this matter was held on July 3, 2018. Hernandez first made his argument that previously unobtainable evidence existed to contradict Mr. Scott's cost estimates in October 2018, the date of his initial petition for writ of administrative mandate. Hernandez, however, did not attach any new or different documentary evidence as exhibits to that writ petition, and made no motion at that time to augment the record in this case.

Further, Hernandez did not file his final petition for writ of administrative mandate until September 2019, more than a year after the last administrative hearing, yet even then Hernandez included no new actual documents to refute or rebut Mr. Scott's completion cost estimates, and again made no motion to augment the record. Hernandez apparently produced no such new documentation during the October 18, 2019 hearing on Hernandez's last petition for writ of administrative mandate, either. Nor has Hernandez proffered any of his claimed "new and different" evidence to this court. Cumulatively, this record of non-production of claimed evidence suggests that no such evidence may actually exist.

Moreover, even if such new or different evidence is presumed to exist, the forum to provide it was the trial court, which Hernandez did not do. Code of Civil Procedure section 1094.5, subdivision (e) states that "[w]here the court finds that there is relevant

evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case." (Code Civ. Proc., § 1094.5, subd. (e).)

"The decisions discussing [Code of Civil Procedure] section 1094.5, subdivision (e), have indicated that the section operates as a limitation upon the court's authority to admit new evidence. The general rule is that a hearing on a writ of administrative mandate is conducted solely on the record of the proceeding before the administrative agency." (*Toyota of Visalia, Inc. v. New Motor Vehicle Bd.* (1987) 188 Cal.App.3d 872, 881.) " ' "It is not contemplated by the code provision that there should be a trial de novo before the court reviewing the administrative agency's action even under the independent review test." ' " (*Ibid.*) " 'Only where the record is augmented within the strict limits set forth in the statute is evidence on the main issues ever received in the superior court [citation].' " (*Ibid.*)

None of the limited instances in which the record may be augmented apply in this case. There is no basis to conclude that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the administrative hearing. Moreover, there is no evidence that Hernandez even attempted to augment the record at the trial court level, which considered Hernandez's petition for a writ of administrative mandate more than a year after the administrative hearing. Further, to this day Hernandez has not proffered any specific documents or other actual evidence in support of his claim that "new or different" evidence exists. We therefore reject this claim to the extent that it underlies any of Hernandez's arguments on appeal.

D.    Conclusion

We conclude that Hernandez waived any objections he might have otherwise made to the trial court's final order by failing to register them at the time the final order was under consideration by the trial court, and also by himself authoring the final order of which he complains.  Based on the presumption of correctness, we conclude that the trial court applied the correct standard of review when it considered Hernandez's writ petition. We also conclude that (1) the trial court correctly determined that Hernandez received a fair hearing, (2) substantial evidence supports the amount of restitution ordered by the Board, and (3) there was no basis for the trial court to entertain any claimed "new" or "different" evidence more than a year after the administrative hearing concluded even if Hernandez had proffered any such evidence, which he did not.  Therefore, the writ petition challenging the Board's disciplinary order and imposition of sanctions was properly denied.

## DISPOSITION

The trial court's May 26, 2020, order dismissing Hernandez's petition for writ of mandate is affirmed.  The Board shall recover its costs on appeal.


SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


DE SANTOS, J.

24.